## TRASIMOND LANDRY *v.* DICKSON AND BOYKEN.

Where the citation of a garnishee contained the title of the court, was in the name of the State and under seal of the court, was tested in the name of the judge and signed by a deputy clerk, and directed the garnishee to answer in writing, under oath, the interrogatories annnexed to the petition within ten days of the service, otherwise judgment would be entered, &c. It was held to be a sufficient mention of the place where the clerk's office was held, and also a sufficient indication to the garnishee of the place where his answers ·were to be filed, under the 179th article of the Code of Practice.

Article 252 of the Code of Practice, seems not to require that the citation to a garnishee, is to be precisely in the same form as the ordinary citation to a defendant.

Where there was no palpable and radical defect in the citation, the petition to annul the judgment which had been obtained, should contain an allegation, that the defendant had not been legally cited, otherwise it will not be competent to attack the judgment on that ground.

An objection that French is the vernacular tongue of defendant, and that the petition and citation were in English only, must be plead in *limine litis*.

The 27th article of the Constitution, does not exempt the Lieutenant Governor from the service of civil process.

In proceedings against a garnishee, who has neglected to answer, his neglect is considered in law as a confession, that he has property of the debtor, and neither judgment by default, nor a rule to show cause, is necessary to fix his liability.

APPEAL from the Third· District Court of New Orleans, *Kennedy*, J. *Durant* and *Horner*, for plaintiff. *Stocton* and *Steele*, for defendants. By the court:

EUSTIS, C. J. This suit was instituted to annul a judgment rendered in favor of the defendants against the plaintiff, for the sum of $990 .06 and interest, on a garnishee process under an execution issued on a judgment, which the defen-

dants had obtained against *David Meyers*, in the Third District Court of New Orleans. There was judgment for the plaintiff, and the defendants have appealed.

The grounds of the plaintiff, as alleged in his petition, are these, according to the summary in the brief of counsel: 1st. That the domicil of the plaintiff was in the parish of Ascension, and that he was therefore not amenable to the process of the court, or subject in any manner to the writ of *fieri facias* or proceedings under it. 2d. Because the petition and citation of garnishment are insufficient and illegal, they being in the English language only, and French being his mother tongue. 3d. Because the judgment was rendered against him without any judgment by default being first taken, or any issue made, or any rule taken against him. 4th. Because the plaintiff was, at the time of the service of the process upon him, the Lieutenant Governor of the State and president of the Senate, and the Senate was then in session, and no process could issue to compel his attendance in court. 5th. Because said judgment was never notified to him in any lawful manner, and, by law, he was entitled to said notice and to an appeal to the Supreme Court ten days after notification. 6th. Because at the time of the service of the garnishee process he owed the defendant, *Meyers*, nothing, and had no property of his. 7th. Because the judgment was unduly and improperly obtained by the attorneys for the plaintiff in the original suit ; that the judge of the district court signed the order for the present plaintiff to answer, under oath, the interrogatories to him propounded, under an error in the hurry of business, under a misapprehension of facts, and without the name of the petitioner being inserted in the order ; that it was well known to the court and to the attorneys, at the time, that the plaintiff was the Lieutenant Governor, and the Senate was then in session, and that he was in the discharge of his public duties, and was temporarily in New Orleans, where he did not reside ; that when the process of the court was attempted to be served upon him, he minutely explained the whole case to the deputy sheriff, who had the process, and satisfied that person that he, the plaintiff, had no property in his hands belonging to *Meyers*, nor was he in any manner indebted to him ; and then and there offered to the person representing himself as the sheriff's deputy, to go with him immediately to court and answer the interrogatories ; whereupon the deputy sheriff then told him, the plaintiff, that he was perfectly satisfied that the plaintiff had no money or property of any kind belonging to *Meyers*, and was not indebted to him ; that it was not worth while for him, the plaintiff, to go down to court and answer the interrogatories, and that he would inform the defendant's attorneys of the facts of the case as represented by the plaintiff, and that these gentlemen would be perfectly satisfied.

The district judge decided the case on grounds not taken by the plaintiff in his petition. He considered the citation in the garnishment as defective in two respects ; 1st, that it did not command the garnishee to deliver his answer in the clerk's office ; and, 2d, that the citation makes no mention of the place where the clerk's office is held. For these reasons, he annulled the judgment rendered against the present plaintiff.

In the proceedings in garnishment, the judgment creditors filed their petition, in which they alleged, that they believed *Trasimond Landry* had in his possession, property of the debtor, or was indebted to him in an amount exceeding twelve hundred dollars. They ask for process against *Landry* as garnishee, and that, after due proceedings had, the property or debt in the hands of *Landry* may be applied, by judgment of the court, to the satisfaction of the execution in the hands of the sheriff. Interrogatories were annexed to the petition, and the

judge directed the "garnishee herein named," to answer the interrogatories within the legal delay. The sheriff returned, that he had served a copy of the petition, interrogatories and citation, personally on the plaintiff, on the 8th December, 1843. On the 9th of January, 1849, the garnishee having failed to answer the interrogatories, judgment was rendered against him for the amount due on the execution.

Several executions were issued against *Meyers*, on the judgment against him, without any success. On the 4th December, 1849, an execution was issued against the plaintiff, directed to the sheriff of the parish of Orleans, which was returned at the instance of the attorney of *Dickson* and *Boylcen*, and another execution was issued against *Meyers*. On the 2d of March, 1850, an *alias fieri facias* was issued against the plaintiff. Proceedings under this execution were enjoined at the instance of the plaintiff in the present action, and the petitioner asks, that the judgment against him be annulled, and the injunction granted, be made perpetual.

Having thus stated the proceedings, it remains to consider the several grounds presented in the plaintiff's petition, and those on which the judge decided to annul this judgment. To begin with the latter.

The objections to the validity of the citation, are, that it does not command the garnishee to deliver his answer in the office of the clerk of the court; and contains no mention of the place where the clerk's office is held. Both of which are required under the 179th article of the Code of Practice.

The citation in this case contains the title of the court, "*Third District* Court of New Orleans," and is in the name of the State, and under the seal of the court. It is tested in the name of the judge, and signed by a deputy clerk. It directs the garnishee to answer in writing, under oath, the interrogatories annexed to the petition within ten days of the service, otherwise judgment will be entered, &c.

The citation thus indicating in its title, that the Third District Court is held in New Orleans, and the clerk's office being in point of fact and practice inseparable from it, the objections to its sufficiency seem to us too technical, even supposing that the citation to a garnishee is to be precisely in the same form as the ordinary citation to a defendant, which nevertheless the article 252 of the Code of Practice seems not to require. But the answer given by the counsel for the defendants to these objections is, that they are not presented by the pleadings and cannot be noticed by the court. He refers to *Landry* v. *L'Eglise*, 3 L. R. 220, and 10 L. R. 169, *Palmer* v. *Yarborough*.

The annulling of a judgment rendered by a court of competent jurisdiction, is one of the gravest matters in the administration of justice. The code enumerates the causes for which a judgment may be annulled for defects of form. Code of Practice 604 and 605. One of them is, that the defendant has not been legally cited. This not having been alleged in the petition as one of the grounds on which the plaintiff asks to be relieved from this judgment, and it being not a palpable and radical defect, as the citation reads, we think it is not competent for the defendants to insist on the nullity of the judgment on that account.

In the case of *Leeds* v. *Debuys*, 4 R. R. 258, which was an appeal taken from a judgment by default, it was urged in argument on the part of the defendant, that French was his native tongue, and the petition and citation served on him being in the English language only, the judgment by default against him

ought to be reversed. But the court held, that the right of the defendant, of requiring the petition and citation served on him to be in the French language, was one of those, like domicil, alienage, official exemption, &c., and must be urged in *limine litis* or considered as waived.

This authority disposes of the first, second and fourth grounds for annulling the judgment. In relation to the fourth ground, it may be added, that the 27th article of the Constitution does not exempt the plaintiff, as lieutenant governor, from the service of civil process. It exempts the members of the general assembly, except in certain cases, from arrest, only during their attendance at the sessions of their respective houses, and going to and returning from the same. It is clear, that all matters of privilege must be taken advantage of by writ or be pleaded.

As to the third objection, that no judgment by default was taken against the plaintiff, or rule to show cause, it is sufficient to say, that the law requires neither. If the garnishee neglects to answer, his neglect is considered in law as a confession that he has property of the debtor, and judgment is accordingly rendered against him for the plaintiff's debt. He is entitled to no notice from the plaintiff of his purpose to proceed against him. *Sturges* v. *Kendall*, 2 Ann. 566. *Pavageau* v. *His Creditors*, 13 L. R. 354.

The fifth objection taken by the plaintiff, that the judgment was not notified to him in a lawful manner, has no relation to the validity of the judgment.

The sixth objection, that he owed *Meyers* nothing, and had no property of his at the time of the service of the process on him, is closed by the plaintiff's neglect in not answering the interrogatories propounded to him. *Uno cuique mora sua nocet.*

There is nothing in the objection that the plaintiff's name was not mentioned in the order of the judge, directing the garnishee to answer the interrogatories. The judge ordered "the garnishee herein named" to answer. Nor is the charge of even haste or misapprehension on his part, in any point of view, admissible or sustained by the shadow of proof.

The petition charges as one of the reasons for which the judgment ought to be annulled, that it was unduly and improperly obtained by the attorneys of the defendants. The particular acts of impropriety are not alleged, unless the narrative of the conversation between the plaintiff and the sheriff's officer is considered as containing them. It is not even alleged, that the attorneys were privy to what passed between those persons.

The testimony of the sheriff's officer and of another witness, was offered on behalf of the plaintiff, and not received by the court, on the ground, that no evidence was admissible which might have been offered previous to the judgment against the plaintiff.

The evidence is all before us, and ought to have been admitted, had the allegations of the petition been sufficient to authorize the court in annulling the judgment on the ground of fraud or ill practices. But we are of opinion, they are not. The general allegation that the judgment was unduly and improperly obtained by the attorneys, is not sufficient. Those words amount to a complaint which can always be made, in one sense, against what is called, in common parlance, a snap judgment. The article of the Code of Practice relied upon by the plaintiff's counsel, shows clearly what is the character of those ill practices for which judgments may be annulled.

A definitive judgment may be annulled in all cases, where it appears, that it has been obtained through fraud or other ill practices on the part of the party

LANDRY
v.
DICKSON.

in whose favor it was rendered, as if he had obtained the same by bribing the judge or the witnesses, or by producing forged documents; or by denying having received the payment of a sum, the receipt of which the defendant had lost or could not find at the time, but has found since the rendering the judgment.

The depositions make out no case of this kind, according to our understanding of them, and we do not feel authorized to remand the case on account of this evidence, because the allegations of the petition in relation to the ill practices complained of are not sufficient, and, if it was received, would make no change in the result. The case has been argued at bar on the effect of the evidence, of which the plaintiff has had the benefit. The whole difficulty in which he has involved himself, results from his not having heeded the process of the court, and obeyed the order of the judge to answer the interrogatories propounded to him, or, not being bound to answer, in not having exhibited to the court the sufficient reasons to excuse him. He thought proper to commit his interests to an irresponsible person, and to suffer himself to be mislead by his advice, instead of following the written directions of the process served on him. Whatever consequences have followed from this course, they are to be attributed to the plaintiff's own neglect, and there is no propriety in straining the law, to relieve a party in such a case.

The fifth objection, we have stated, has no relation to the validity of the judgment. It is urged as a sufficient ground for sustaining the injunction.

The Code of Practice provides, that the plaintiff cannot take execution until after ten days from the notification of the judgment to the defendant. Article 624. The judgment in this case having been rendered without the appearance of the defendant, he is entitled to this term; and his right of appeal also may be reserved to him to date from the service of the judgment. The judgment does not appear to have been notified to him in the mode which the law requires, and, upon motion, it would have been competent for the plaintiff to have had the execution against him quashed. The courts in New Orleans were in session at the time the writ of execution issued and continued open for months after, thus affording to the plaintiff ample means for relief. From the correspondence which took place between the plaintiff and the attorneys of the defendant, we think the plaintiff is precluded from urging the non-notification of the judgment, as a ground for arresting the execution by way of injunction.

The judgment of the district court is therefore reversed; and the petition of the plaintiff dismissed, with costs in both courts, with forty-five dollars damages for extra interest.