## No. 11,877.

SOUTHERN CHEMICAL AND FERTILIZING COMPANY, LIMITED, VS. B. J. WOLF & SONS ET AL.

The rule that, upon the trial of an exception of no cause of action the allegations of the petition are to be taken for true does not extend to conclusions of law, nor to matters of evidence pleaded in the petition.

An individual citizen complained to certain public officials of the non-performance of duty by a corporation which, under a conventional contract, was acting as a public agency. He had reason to believe the officers addressed had supervisory control over the corporation's acts. The contract affected separately, both by way of right and obligation, individual citizens. The corporation brought an action for libel, against the complaining citizen, for language used in the complaint. Held: As the language contained in a complaint so made could hardly occasion injury against a corporation so engaged under a contract conferring upon them vested rights, the allegation of plaintiff's petition should show the extstence of facts from which injury could arise.

APPEAL from the Civil District Court for the Parish of Orleans. Théard, J.

Branch K. Miller and Farrar, Jonas & Kruttschnitt for Plaintiff, Appellant.

Lazarus, Moore & Luce for Defendants, Appellees.

Argued and submitted February 27, 1896.
Opinion handed down March 9, 1896.

" It is alleged that on the seventh day of February, 1895, the defendants did compose and publish a certain false, malicious, defamatory and libelous matter concerning the plaintiff and its business, the said publication being in the form of a letter directed to Dr. Samuel R. Olliphant, President of the Board of Health, and being in the words and figures, to wit:

" 'B. J. WOLF & SONS, 26, 28, 30, 32 AND 34 BIENVILLE STREET.

" 'NEW ORLEANS, February 7, 1895.

" ' *Dr. Samuel R. Olliphant, President of the Board of Health, City:*

" 'DEAR SIR—We are confronted with a great difficulty, in which we are compelled to trouble you for advice. We have a number of employees working in our factory, who are in the habit of bringing their lunch in paper bags, and after eating they throw these bags, which have become saturated with grease, together with the scraps remaining from their noonday meal, into a box provided for that purpose. This box is daily placed on the sidewalk to be removed by the Garbage Company, which has heretofore done the work, although at irregular intervals. Now, however, the drunken driver of the garbage cart refuses to remove the refuse, unless he is paid for his trouble. His reason for doing so is not that the garbage is of a different quality from that which he is required to dump into his garbage cart, but because there is too much of it. We referred the matter to Mr. Farrell, the Commissioner of Public Works, who in turn referred it to Mr. O'Sullivan, City Attorney, and the latter, without hearing the facts from us, rendered an opinion to the effect that the Garbage Company is not required to remove the refuse from an establishment like ours, basing his view apparently on the supposition that we expected the company to take away the clippings of cloth cast aside in the process of cutting garments. In this he is mistaken, because these cuttings are of too much value to be given away, as they are collected and sold by us each week, bringing in annually a respectable sum. As we understand the matter no one else except the Garbage Company is allowed to carry away garbage, and as this company will not do it we are forced to the alternative of leaving this garbage to putrefy in our yard, thereby endangering the health and possibly the lives of our employees. As the chief health officer of the city we come to you for advice, and trust that

you will give the matter your immediate attention, and let us know what we are to do in a case important not to us but to the whole city.

"'Very respectfully,

"'B. J. WOLF & SON.'"

Ordinance No. 7860 annexed to plaintiff's petition is entitled: "An ordinance to provide for the collection and disposal of garbage, etc., by the adoption of a system therefor, and the entering into a contract therefor for twenty years, and providing penalties for the violation of this ordinance."

So much of it as is applicable to the issues involved in this litigation is as follows:

"Whereas, the method of removing and disposing of garbage heretofore used in this city has proved entirely inefficient and objectionable to the public as well as to private citizens, and

"Whereas, the fast increasing growth of the city and increase of population demand the adoption of some modern and efficient method of garbage removal such as is in use in other cities of the United States; and

"Whereas, the Board of Health has recommended that the city of New Orleans take steps to provide some such system.

"Section 1. Be it ordained by the Common Council of the city of New Orleans, that the Comptroller be and he is hereby directed to advertise * * * for sealed proposals for the collecting, removing and disposing of all garbage from private residences, business places, streets and alleys, and all public places within the limits of the city of New Orleans * * * for twenty years by some improved system similar to those now in use in other cities of the United States.

\*	\*	\*	\*	\*	\*	\*	\*

"Sec. 4. Be it further ordained, etc., that the word garbage as used in this ordinance shall be construed to mean house and kitchen offal, and all refuse matter not excremental, whether solid or liquid, and composed of animal and vegetable substances, including dead animals coming from public or private premises of the city, and not destined for consumption as food. No ashes, dirt or other substance foreign to garbage shall be covered by this contract, except as hereinafter provided, and it shall be unlawful for any occupant or occupants of any premises in the city of New Orleans to mix any such ashes, dirt or other substance foreign to garbage, with

the garbage to be removed from said premises, as herein provided, under a penalty of not less than five nor more than twenty-five dollars fine for each offence, or imprisonment for not more than thirty days.

" Sec. 5. That the contractor shall, by proper notice in writing issued to occupants of premises in the several garbage districts, inform the occupants of such premises of the hours when garbage will be removed from such premises, and it will be the duty of such occupants to have all garbage ready for removal therefrom at the hours so specified by the contractor for such premises, under a penalty of not less than ten dollars fine, or imprisonment for not more than ten days for each offence.

"Sec. 6. That it shall be the duty of the contractor to collect and remove from all private residences, business places, streets and alleys, and all public places within the limits of the garbage districts, all slops, offal, garbage, dead animals, in suitable vehicles or carts, and other animal and vegetable matter in enclosed water-tight metallic vehicles or carts, so that no drippings or refuse can be dropped on the streets, alleys or public places in the city, to a certain point or points to be approved by the City Council, where the said contractor shall have erected on land, owned or leased by him, a first-class plant, including the necessary buildings and machinery for the destruction by fire or the reduction and conversion of said material so removed into merchantable products * * *

"Sec. 7. That it shall be the duty of the contractor to remove from within the garbage districts all street pilings collected by the public works department from gutters, ashes, house and ordinary street sweepings; but he shall not be required to remove debris from buildings in course of demolition, repair or construction, or any other refuse except that enumerated in this ordinance.

"Sec. 8. That the contractor shall, by proper notice in writing issued to the occupants of premises in the several garbage districts, inform the occupants of such premises of the hours when said ashes and house sweepings will be collected and removed, and it shall be the duty of such occupants to have such house sweepings and ashes placed in a box or barrel at some convenient point for the contractor and ready for removal at the hour designated by him under a penalty for each omission of not more than ten dollars fine or imprisonment for not more than ten days.

" Sec. 10. That the said works and plant shall, at all times, be subject to the inspection and supervision of the Board of Health, and said board shall have supervision of the means and men employed in the collection, removal and disposition of said garbage, and if at any time the said collection and removal shall be improperly done, or not conducted in a sanitary manner through fault of said employees, said employee or employees shall, on demand of ·said Board of Health, be discharged by said contractor and reliable and competent men put in their places.

" Sec. 11. That said contractor shall collect all dead animals daily and all slops, garbage, offal and animal and vegetable matter in the city of New Orleans daily from all private premises, etc.

·.    *    *    *    *    *    *    *    *    *

" Sec. 13. Should any complaint of non-collection or removal of garbage be made 'to the Commissioner of Public Works which, upon investigation, shows that garbage, etc., has not been removed within the proper time the said contractor shall, upon notice by said commissioner, immediately send a special wagon to remove and collect the same, and on the contractor's failure to collect and remove the said garbage within the twelve hours after notice the contractor shall forfeit the sum of ten dollars for each and every twelve hours that he fails to remove said garbage, and said penalties shall be held and deducted monthly from the amount earned under this contract by certificates issued to the Comptroller by the Commissioner of Public Works.    In case said contractor is aggrieved by the said deductions. of said commissioner he may appeal to the Council for relief, but the decision by the Council in said matter shall be conclusive and binding upon the contractor.

" Sec. 14. That when the contractor is ready to begin operations    *    *    *    he shall notify the Mayor, and the Mayor shall thereupon issue his proclamation    *    *    *    and it shall thereupon become the immediate duty of the occupants of every dwelling house or other building in the city of New Orleans to provide a suitable metallic water-tight covered box or other covered metallic vessel, in. which said occupants shall cause to be placed daily all offal, garbage, slops and refuse, animal and vegetable matter from the premises, and shall place such metallic covered vessel in such place as will be most convenient for said contractor to remove same, and any failure to·comply with the provisions of said proclamation shall

636        SUPREME COURT OF LOUISIANA.

Fertilizing Co., Ltd., vs. Wolf & Sons et al.

subject said occupants to fine of not more than ten days, or imprisonment for not less than ten days for each and every day they shall fail to provide such box or vessel or comply with the provisions of this section.

" Sec. 15. That after the proclamation of the Mayor it shall be unlawful for any other person than the said contractor to collect, remove or dispose of from any public or private place any garbage, dead animals or other matter provided for in this ordinance; any person violating this clause of this ordinance shall be fined not less than five nor more than twenty-five dollars for each offence, or shall be imprisoned for not more than thirty days.

" Sec. 18. That the price which the city of New Orleans is to pay the said contractor for the services to be performed under said contract shall be divided into sixty equal parts for the first five years, and the same ratio shall be the basis of all payments to said contractor for each succeeding five years during the existence of this contract, so that payments shall be made monthly on the one-twelfth principle. Payments shall be made to the contractor by warrant of the Comptroller on the Treasurer of the city of New Orleans, and the city of New Orleans binds and obligates itself to appropriate every year during the existence of this contract in the annual budget of receipts and expenditures the sum agreed to be paid said contractor each year."

Defendants contend, first: That under the terms of the ordinance, which defines the duties and rights of the plaintiff corporation, the public, who are the patrons of the corporation, are compelled to patronize it, and therefore no damage or injury could result to the business of the plaintiff by the alleged libelous communication.

Second: That the communications made the basis of plaintiff's demand are privileged. In respect to their first position they maintain that the plaintiffs are a quasi public functionarv, vested by the City Council with the duty of removing, collecting and taking off the garbage of the city; that they are charged with public duties the fulfilment of which is of vital importance to New Orleans and its inhabitants, and being organized in the interest of the public and for public purposes, they are more properly a subject of criticism than would be a body created for private pursuits. That, therefore, authorities cited with reference to criticism of and animadversion upon private corporations have no application to this case. That plain-

FORTY-EIGHTH ANNUAL REPORTS, 1896.          637

Fertilizing Co., Ltd., vs. Wolf & Sons et al.

tiffs do not claim to have been injured in their business in so far as they may be engaged in the manufacturing of products out of the garbage materials which they are authorized to collect. They call attention to an extract from Townsend on Slander and Libel, Sec. 263 (3d edition), in which the author, while insisting that an action may be maintained upon language concerning manufacturing, trading or banking corporation, or engaged in any other occupation in which credit may be material to its success, calculated to injuriously affect their credit, without proof of any specific damage as such language must necessarily occasion them pecuniary injury, declares that "language concerning a corporation not engaged in business can hardly occasion, and certainly does not necessarily occasion it any pecuniary injury; therefore, in regard to language concerning such a corporation no action can be maintained except upon proof of special damage."

From a judgment sustaining the exceptions of defendants plaintiff appeals.

———

The opinon of the court was delivered by

NICHOLLS, C. J. Plaintiffs contend that for the purposes of a decision upon the exceptions all the allegations of their petition are to be taken for true.

Plaintiffs in their petition have pleaded part of the evidence upon which they would rely in the event of a trial on the merits, and announced in some places conclusions of law. These particular portions of the petition we do not consider as falling under the rule invoked, that on the trial of an exception of no cause of action, the allegations of the petition are to be taken for true.

We need not enter into a discussion of the question whether corporations of any kind are authorized or not to maintain an action for libel, nor what may be the rules of law in relation to the subject generally. Our inquiry is limited to an examination of the right of the plaintiff corporation to institute the present action.

They are admittedly acting as a public agency of the city of New Orleans in respect to a duty with which the city itself stands charged. Their agency is secured to them by an express conventional contract covering a period of twenty years. They receive from the city for the services they are called on to perform under the contract the amount fixed by the acceptance of their bid and the advantage of

receiving and converting into merchantable products so much of the materials removed by them as are susceptible of being utilized for that purpose. For and in consideration of the advantages to accrue to them under the contract plaintiffs undertook to faithfully perform the duties enumerated therein. The contract reaches, touches and affects every householder in the whole city.

They are not only called upon under penalties to do certain acts, but they are also called upon under penalties to abstain from doing certain other acts. Not only is the right of individual liberty of action of citizens materially restrained by the ordinance upon which plaintiffs base their rights, but danger of fine and imprisonment confront them in case of transgression of its provisions. Unlike many contracts entered into by the Common Council in respect to which the individual citizen has only an extremely remote relation and connection, this particular contract comes home daily and specially to every family in the limits of the corporation, and brings the heads of each as near to being actual parties to it as it is possible for them to be brought under a contract passed by public authority. The individual citizens can scarcely be looked upon as utter strangers to this contract. They have separate rights and separate obligations based upon it, which authorize them to deal with it and the contractors in a very different manner from that which they would be entitled to deal had they no direct connection with either. We are of the opinion that whenever a difference arises between the contractors and the occupants of particular premises as to either a construction of the rights and obligations of the former under the contract, or as to their performance or non-performance of duty, the latter have the right, under Sec. 13 of the ordinance, to submit the matters in dispute to the Commissioner of Public Works for investigation and for action, should action be justified. We do not think plaintiffs call in question the correctness of that proposition, on the contrary they refer to the action of the defendants in calling the attention of the commissioner to the complaints urged by them as action "which had exhausted their remedy." They insist, however, that they could go no further—that they could go no further than the commissioner; that the Board of Health had no jurisdiction over the matter and that the communication made to it was unauthorized and unjustifiable.

Let us see, if we can, what the situation was when defendants

wrote the communication in question to the Board of Health. There evidently had been a difference of opinion between the plaintiffs and the defendants in respect to the duty of removal by the former of the contents of a certain box which the latter were in the habit of placing upon their sidewalk. The matter having been referred to the Commissioner of Public Works, and by him to the City Attorney, had resulted in the conclusion reached by those city officials that it was not part of the duty of the contractor to remove them. The effect of that conclusion would be to cause the contents of the boxes, such as they were, to be thereafter left on defendants' premises without any designated method for their removal. In that situation of affairs defendants, obviously thinking that it was not their own duty to remove them, wrote to the President of the Board of Health asking for his advice in the premises, stating that the opinion reached by the City Attorney had been based upon an erroneous idea as to what the contents of the box were, stating affirmatively what those contents had been, and what they would continue to be, and stating that such articles left on private premises in the city were calculated to injure the public health.

We see nothing in this communication of a denunciatory or vituperative character other than the declaration made in regard to the driver of the particular wagon of the plaintiffs which removed the garbage from that neighborhood. There is nothing intemperate that we see in this communication, nothing more than a statement from their standpoint of what they conceived the situation to have been, and what they conceived it would be, and asking for advice as to obtaining relief from that situtation. We see nothing in that letter to that official calculated to bring the plaintiff company into public contempt, or disrepute, or to damage them. The letter called for advice at furthest inquiry, and this from a source from which advice would naturally be sought and inquiry expected. It is the very general impression throughout the community that the Board of Health has cognizance of all matters affecting the cleanliness and sanitary condition of the city, and were this mere general impression insufficient to have warranted defendant in having referred this matter to the president of the board, we are by no means prepared to give to the tenth section of the ordinance the narrow construction which plaintiffs place upon it as to the scope of the duties of the Board of Health in respect to garbage or

offensive or injurious articles left in the public streets or on private premises. This case does not call for any discussion of the right or duties of the board—it is enough for present purposes to say that in our opinion defendants have sufficient warrant under the terms of the ordinance itself to write the communication they did. We do not give to a conclusion reached by the Commissioner of Public Works adverse to a contention raised by a citizen as to the duties of the contractors, the conclusive character which the plaintiffs contend for as closing the door to further remonstrance, criticism or complaint.

The conclusions we have reached in the case relieve us from a minute analysis of the allegations of plaintiffs' petition, for, granting that the box never contained articles of the precise kind which defendants declared it to have contained, and that any statement to that effect, either to the Commissioner of Public Works or to the president of the Board of Health, was untrue, and that, therefore, plaintiffs had never in point of fact refused to remove from defendants' premises articles which suffered to remain thereon " would putrefy in their yard, thereby endangering the health and possibly the lives of their employees," have the plaintiffs disclosed herein a cause of action.

There was unquestionably a difference between the defendants and the driver of one of the plaintiffs' wagons, as to the duty of the company to remove the contents of a certain box which the former were in the habit of leaving upon their sidewalk. The real matter in dispute was the removal of those contents; their character being merely incidentally brought into the controversy as arguments for or against the duty. It is not denied that the contents of the box, such as they were, remained on the premises unremoved. It is not asserted that the company were not, under the obligations imposed upon them by Sec. 8 of the ordinance and contract, called upon to remove them entirely, independently of the question whether or not they fell under the term " garbage," as used in one portion of the contract. If the contents of this box were permitted to remain on the sidewalk, defendants (claiming that it was plaintiffs' duty to take them away, under their contract) had a right to insist that they should do so, and the fact that in doing so, they maintained (while the plaintiffs denied) that the contents constituted " garbage," and that defendants maintained that, if left where they were, they

Fertilization Co., Ltd., vs. Wolf & Sons et al.

would be injurious to defendants' employees, while plaintiffs maintained, and still maintain, they were inoffensive, furnishes a very narrow foundation to build an action of libel.

Plaintiffs' occupation and business rest, as we have said, upon a conventional contract, which fixes its continuance for twenty years. They have vested rights in this matter, of which they can not be divested by either the whim, the caprice or the dissatisfaction of the Council. A rescission of their contract could only be brought about through proceedings in which would be subjected to judicial scrutiny and determination, by judicial tests, the respective rights acd obligations of the parties.

It is true that the thirteenth section of the ordinance, No. 7860, confers upon the Commissioner of Public Works the right to declare a forfeiture of ten dollars upon the amount otherwise due the plaintiffs, for every neglect by them in removing particular garbage; but this power is to be exercised only after refusing to remove after notice from the Commissioner, and even in this matter his action is subject to appeal to the Council. The section contemplates investigation by the Commissioner prior to the infliction of the forfeiture. It is not alleged by the plaintiffs that any litigation has resulted from the alleged libel; that either the Commissioner or the city has fined or threatened to fine the plaintiffs; that the Common Council has attempted to investigate their conduct, or to intimate any intention to resort to proceedings looking to the rescission of the contract. There is nothing going to show that in point of fact the plaintiffs have lost the confidence of the City Council. On the other hand, nothing which the defendants said in their communication could have had any legal effect upon the dealings of citizens with the company or the company with them. The rights and obligations of each householder are fixed by the ordinance and the contract. Each householder is entirely separate and distinct from the others, each has to be judged by his own conduct under the terms of the ordinance. Plaintiffs declare, in general terms, in their petition that the communication " has damaged " and " will seriously damage and injure them " in their business, and that " said damages " amount to the full sum of twenty-five thousand dollars, but they state no fact or facts from which a court can discover any damage or injury in this case. They say that the effect of the communication will be to subject them, perhaps, to

41

unnecessary and annoying surveillance, and create a disposition on the part of the city to captiously impose upon them penalties for violations of their contract, but parties who enter into public contracts with public bodies affecting individual rights are bound to know that in entering into such contracts they open the door to the legal scrutiny and criticism of their acts by every citizen whose interests are involved in the proper discharge of their duties.    Surveillance may be annoying, and may, sometimes, to the contractors, seem unnecessary, but it is far better that annoying and unnecessary surveillance should exist than that the right of petition or complaint of citizens to the supervising officials should be stifled through fear of actions for libel.    Supervising officers themselves are public officials, and they have to be frequently stimulated into action by having the propriety of their own course called into question.    We do not see that the defendants in this case did anything more than they had the right to do, nor wherein they overstepped the legal limits of the right of criticism and complaint.

We think the judgment appealed from is correct, and it is hereby affirmed.