## No. 12,644.

STATE EX REL. CAPITOL CITY OIL MILLS COMPANY VS. HON. F. A. MONROE, JUDGE, AND BOLAND S. LEATHERS ET ALS.

The jurisprudence of the State has recognized the right of a plaintiff in injunction when the injunction taken out at his instance has been permitted to be bonded by the defendant, and he has been refused a suspensive appeal from such order to bond, to test the correctness of the District Judge's ruling on the character and results of the act enjoined by calling into exercise in his behalf the supervisory powers of the Supreme Court, under an application for a *mandamus* to the judge to grant the appeal asked for. The position of the parties, and the scope of the issues presented to the court for decision under such circumstances, are discussed in Puckette vs. Hicks, 39 An. 901; State *ex rel.* Violett vs. Judge, 46 An. 81, 82; State *ex rel.* Lehrman vs. Judge, 46 An. 163, *et seq.*

For the purposes of a decision, as to whether the act prohibited was one such as would work plaintiff an irreparable injury, the allegations of the petition for injunction are to be taken as true, with the limitation that this extends to and covers only allegations well pleaded, not to conclusions of law. nor matters of mere evidence pleaded therein. An allegation that the act restrained, if permitted, would occasion irreparable injury. is a mere inference and deduction from the acts and facts charged, the verity and soundness of which the Supreme Court can review. Crescent City Stock, etc., vs. Police, 32 An. 1194, 1195, 1196,

The issue presented to the court (though in a different form) is substantially the same as that which it would have to pass on, had the suspensive appeal asked for been granted, and had the appellee moved to dismiss the appeal on the face of the papers, on the ground that it should not have been granted, as it was from an interlocutory decree working no irreparable injury. Villavaso vs. Barthet, 30 An. 417.

ON APPLICATION for a Writ of *Mandamus.*

*Farrar, Jonas, Kruttschnitt & Gurley.* for Relator.

Respondent Judge *pro se.*

*Geo. W. Flynn* for B. S. Leathers and Boss Oil Mills, Respondents.

---

Submitted on briefs November 10, 1897.
Opinion handed down December 13, 1897.
Rehearing refused February 21, 1898.

---

The opinion of the court was delivered by

NICHOLLS, C. J.   Relators aver that in October, 1897, they insti-
tuted a suit in the Civil District Court for. the parish of Orleans, in
which they represented that they were engaged in the purchase of
cotton seed and the manufacture of the same into oil, cake and
other products, and had been so engaged for many years.   That it
had found it to be to the mutual interest of themselves and of the
planters producing cotton seed and designing to sell the same to
them that relators should furnish, at their own cost and expense,
cotton seed sacks to such planters as were disposed to sell their cot-
ton seed to relators, and that in the course of said business they had
sent out a very large number of sacks through the country adja-
cent to the Mississippi river and its tributaries in the States of Louis-
iana and Mississippi, which were distributed to planters and deliv-
ered to them with the express understanding that they were to be
used in shipping seed to relators only, or to be returned to them
empty at the end of the season; that the said course of business
had been adopted by themselves and other persons and corporations
engaged in the purchase of cotton seed and the manufacture thereof
into products for several years, and was practically universally pur-
sued throughout the districts aforesaid; that Boland S. Leathers,
the master of the steamboat Natchez, had for several years past
been engaged as master and owner or part owner of steam-
boats. in the business of a common carrier on the Mississippi
and its tributaries, and in the pursuit of such busi-
ness had been fully informed of the course of business
pursued by relators and others as described, and with the agree-
ments and understandings and agreements between relators and
the planters, and that he, in the course .of his business as a car-
rier, had repeatedly himself delivered sacks to planters for owners
of oil mills, and was fully informed as to the manner. in which the
cotton-seed business was. conducted; that said Leathers, with full

knowledge of the said course of business and relator's ownership of the cotton-seed sacks so delivered by them to the planters with whom they did business, and which sacks were identified by the name and brand of relators thereon, and well knowing that said sacks were delivered to said planters by relators solely for the limited purpose of being filled with seed to be sold to relators at market price or otherwise, to be returned to them empty, nevertheless purchased seed in sacks so belonging to relators so purchasing seed for his own account or for that of a cotton-seed mill leased and conducted by him, either alone or in association with others, under the name of the "Boss Oil Mill;" and that said Leathers had taken possession of a large number of sacks bearing relator's mark and to it belonging, and held the same in his possession and in that of the Boss Oil Mill, in the city of New Orleans; that relator had suffered damages through the conduct of said Leathers in the sum of five hundred dollars, being the value of the use of said sacks during the time that they had been in the possession of said Leathers and said Boss Oil Mill, being a fair and reasonable compensation for the rental and use of said sacks and for the deterioration of their value, and for the other damages set forth in their petition; that relator's trade and business which had been established by it through years of effort and careful attention would be diverted and relator irreparably injured unless said Leathers and said Boss Oil Mill should be enjoined as by relator prayed for from thereafter taking possession of any sacks belonging to relators and identified by their mark and brand.

That in and by said petition relators prayed among other things that upon its giving bond in an amount to be fixed by the court a writ of injunction should issue against said Leathers and said Boss Oil Mill, their agents, clerks, employees, assistants and officers, enjoining and restraining them and each of them from taking possession of any bags upon the banks of the Mississippi river or its tributaries in the States of Louisiana or Mississippi belonging to relators and identified by its mark and brand, which said marks and brand were alleged to be in the words and letters following, to-wit: "C. C. C. M. C., Baton Rouge," and that in and by the prayer of said petition relators further prayed for citation of said Leathers and of said Boss Oil Mill, and for judgment perpetuating said injunction, and for other relief as in said petition contained.

FIFTIETH ANNUAL REPORTS, 1898.            269

State ex rel. Oil Mills Co. vs. Judge and Leathers et als.

That said petition was duly verified by affidavit according to law, and that upon the same an order was duly entered ordering an injunction to issue in the premises as by relators prayed for; that said injunction duly issued and was duly served upon defendants; that defendant Leathers subsequently applied to Hon. Frank M. Monroe, judge of the Civil District Court, to whom said case had been allotted according to law for the dissolution of said injunction upon bond; that said judge upon said application rendered an *ex parte* order allowing said Leathers to bond said injunction. Relators aver that all said facts would appear by the record in that suit, which they declare they make part of their application, and aver would be presented at the hearing of the same.

Relators aver that they did seasonably thereafter apply to the Civil District Court for a suspensive appeal from said order, but that the Hon. Frank A. Monroe, to whom said application for an appeal was made, had wrongfully refused and declined to render an order of appeal in the premises, as would appear from the petition for an appeal duly filed in the cause with the refusal of the judge to grant the same endorsed upon the said petition in writing; that in applying for said appeal relators requested the judge to fix the amount of said bond therefor, as he was required by law to do and also to fix the return day for the same, and that relators were and are still ready to give such bond as may be fixed in the premises.

Relators aver that it appears from the face of the papers that the damages accruing from the dissolution of said injunction will be irreparable; that in addition to the pecuniary damages which (as would appear from affidavit of record) will largely exceed two thousand dollars, the damages to accrue from the failure to dissolve said injunction will be the entire breaking up of relators' business through the wrongful appropriation of its property by defendants, and that the amount of the injury to be suffered by relators through such wrongful appropriation of their property can not be estimated in dollars and cents, and no adequate relief exists save and except the said writ of injunction.

The premises considered relators pray that an alternative writ of *mandamus* issue, commanding said Frank A. Monroe, Judge of Division " C " of the Civil District Court to render an order upon the application of relators, granting relators a suspensive appeal from the order allowing Boland S. Leathers to bond said injunction and

requiring him to fix the amount of bond for said appeal and a return day for the same.

That after due proceedings said alternative writ be made absolute and perpetual.

The District Judge for answer averred that "in his best judgment, it appeared upon the face of the papers that the damage to the relators which might result from the dissolution of the injunction on bond, as set forth in relator's petition, could not in the nature of things be irreparable, but sounds in dollars and cents, and hence, under the jurisprudence as established by the Supreme Court, a suspensive appeal does not lie from the order dissolving said injunction on bond."

### OPINION.

On the 15th of October, 1897, the Boss Oil Mills and Boland S. Leathers were upon the petition of the Capital City Oil Mill Company and Louisiana corporation, doing business therein and having its domicile in the city of Baton Rouge, "enjoined, restrained and prohibited from taking possession of any bags on the banks of the Mississippi river or its tributaries in the State of Louisiana or Mississippi belonging to petitioners and identified by its mark and brand, viz.: C. C. C. M. C., Baton Rouge," and to remain enjoined, restrained and prohibited until further orders of the Civil District Court.

On the eighteenth of the month Borland S. Leathers, one of the defendants in injunction, applied for and obtained an order from the court dissolving the writ of injunction upon his furnishing bond and security.

The order was granted upon the averment that the writs of injunction worked an irreparable injury to defendants.

On the 28th of October relators applied for a suspensive appeal to the Supreme Court from the order to bond, alleging that it was an interlocutory order which caused them irreparable and pecuniary damages exceeding two thousand dollars.

The District Judge refused to grant the appeal, assigning in writing as his reason that the injunction was dissolved, as he believed, from the facts disclosed upon the face of the papers, that the dissolution would not work the plaintiff (relator herein) irreparable injury; that he was of the opinion that a suspensive appeal ought not to be granted from the order.

Plaintiff in the suit then applied to the Supreme Court as relator for a mandate directing the District Judge to grant the suspensive appeal which he had refused.

Both the order granting the injunction and that authorizing its bonding were *ex parte*. If the act prohibited by an injunction be not such as might work an irreparable injury to the party at whose instance the injunction issued, the court is authorized at its discretion to dissolve the same on bond to be furnished by the party enjoined.

Article 307 of the Code of Practice conveys that power in unambiguous terms.

In equally unambiguous language, a right of appeal is granted by law (Code of Practice 566) "from all interlocutory judgments when such judgment may cause the party legally aggrieved thereby an irreparable injury."

The whole issue before us on this application is whether or not the conclusions of the District Judge, that the act prohibited by the injunction which issued in this case was not of a character to work an irreparable injury to the plaintiff at whose instance it was issued and therefore was subject to be dissolved on bond, were well founded or not. If they were, then his action in ordering the bonding of the injunction and in refusing to grant a suspensive appeal therefrom must stand as against relators' application.

While the right of the District Judge to order the dissolution of an injunction which he has issued is conditioned upon the fact that "the act prohibited by the injunction is not such as may work an irreparable injury to the plaintiff," the right of the plaintiff in injunction, whose injunction has been bonded, to appeal suspensively from the order granting the dissolution is conditioned upon the opposite fact that the act prohibited should be such as might work him an irreparable injury, and, therefore, one such as the court could not legally dissolve on bond after the injunction had been granted. The right is only an absolute right when that condition of things really exists. The District Court is necessarily called upon to decide primarily both upon the right of the defendant to have the injunction bonded, and that of the plaintiff in injunction, after the injunction should have been ordered to be dissolved on bond, to be granted a suspensive appeal from such order. A refusal to grant the suspensise appeal would be the logical outcome of an order to bond, for the

latter order would necessarily have had to be based upon conclusions irreconcilable with a right to the appeal asked.

In view of the fact that the right to a suspensive appeal would be absolute if plaintiff in injunction was correct in respect to the consequences of a continuance of the acts prohibited, the jurisprudence of the State has recognized his right to test the correctness of the judge's ruling on the character and results of the act enjoined by calling into exercise in his behalf our supervisory powers under an application for a *mandamus* to the judge to grant the appeal asked for when refused.

The position of parties situated as are those before the court and the scope of the issues presented to the court for its decision have been fully discussed in Puckette vs. Hicks, 39 An. 901; in State *ex rel.* Violett vs. Judge, 46 An. 81 and 82, and State *ex rel.* Lehman vs. Judge, 46 An. 163 *et seq.*

In State *ex rel.* Violett, following out closely the views of the court in the case of Puckette vs. Hicks, we said: "The question is whether the judge was warranted and justified in his refusal. On such an inquiry this court has necessarily to determine whether the judge's discretion, which only extends legally to cases wherein the dissolution of the injunction would not work irreparable injury to the plaintiff, has been legally applied or not. If we find it has not, we grant relief; otherwise relator takes nothing by his application to us. As has been said several times by this court each case must stand or fall upon its own special state of facts. (White vs. Casanave, 14 An. 57; Blanc vs. Murray, 36 An. 167.) For the purpose of our decision we take as true the allegations of fact contained in the petition for injunction, confining ourselves to the restricted issue on the pleadings as to the correctness *vel non* of the judge's action in the matter of the refusal of the appeal, which carries with it the determination of the question whether the bonding of the particular case would or would not work irreparable injury to the plaintiff. If we could under any circumstances extend our inquiries touching the injunction proper, the matter which we could consider would have to be very exceptional and radical in character. The whole subject has been very fully discussed in State *ex rel.* Puckette vs. Hicks, 39 An. 901, where a *mandamus* was asked by plaintiff in injunction to compel the defendant judge to grant a suspensive appeal

from an order dissolving a preliminary injunction." We quoted from a portion of the decision in that case, in which the court said that in the inquiry before us the allegations of plaintiff's petition were taken for true so far as the facts therein set forth are concerned; that by this was not meant that the court was to be concluded by mere allegations in the petition that the acts restrained will occasion irreparable injury; that such allegations were mere inferences and deductions from the acts and facts charged, the verity and soundness of which the court could review.    Citing Crescent City vs. Police Jury, 32 An. 1194, 1195 and 1196.

That it had to examine the facts charged and the nature and character of the injury which might be inflicted by the acts complained of and thus determine whether such injury might be irreparable or not.    That it was difficult to lay down any precise rule as to what gives an injury the quality of being irreparable, but that the general principle was that an injury, the damage from which is merely in the nature of pecuniary loss and could be fairly and fully repaired by compensation in money is a reparable injury for which a bond of sufficient amount and property secured would afford all adequate relief.    Citing Crescent City vs. Police Jury, 32 An. 1194.

The statement that the allegations of the petition for injunction are to be taken as true for the purpose of a decision as to whether the prohibited act was one such as would work plaintiff in injunction irreparable injury must be taken with the limitation attached to the rule announced, which is that it extends to and covers only allegations well pleaded, not to conclusions of law nor matters of mere evidence pleaded in the petition (Fertilizing Company vs. Wolff, 48 An. 631), nor surplusage.

We have in this case at bar " examined the facts charged and the nature and character of the injury which might be inflicted by the acts complained of," which it is our duty to do as recognized in the decisions cited, and State ex rel. Abraham vs. Judges, 45 An. 887, 888, and Villavaso vs. Bartlet, 38 An. 417, and have reached the conclusion that the District Judge did not err in refusing relator a suspensive appeal. Had he granted an appeal and had the appellee, on its reaching this court prayed for its dismissal on the face of the papers upon the ground that it should not have been granted, inasmuch as it was from an interlocutory decree working no irreparable injury, we should have been forced to have

sustained the motion.   The issue presently before us is substantially the same as would have been presented to us under these hypothetical conditions though presented in a different form. (Villavaso vs. Bartlet, 38 An. 417.)

In Southern Cotton Oil Company vs. Leathers and Union Oil Company vs. Leathers, 49 An., p.— , decided this day, in which the pleadings differ in no material respect from those in the present case, and in which the judges of the Civil District Court GRANTED suspensive appeal, to the plaintiffs in injunction from their orders allowing the bonding of the injunction, this court on motion of the appellees *dismissed the appeals* as having *been improvidently granted.* The conclusions *reached in those cases control the one at bar*.   We note the objection made by the relator that defendant in injunction in his application to bond suggested to the court that a continuance of the injunction would work TO HIM an irreparable injury, instead of declaring that the act prohibited by the injunction was not such as might work an irreparable injury TO THE PLAINTIFF, but we do not think that fact makes any material difference in the situation.   The District Judge has ordered to be bonded an injunction which he had granted *ex parte,* for the reason specially assigned by him that it would not work PLAINTIFF an irreparable injury, and basing himself on that conclusion he has refused to grant a suspensive appeal from this refusal.   It is the correctness of that conclusion with which we have to deal.

We are not called on to express any opinion as to whether the injunction which issued in this case should have been granted or not, to say whether relator would have been entitled to recover damages for the acts complained of or not, or if so entitled what those damages would be.   We go no further than to say, that granting that the injunction was properly issued and that damages were legally demandable, the damage or injury would not be an irreparable injury.   (King vs. Harper, 33 An. 496.)

We are of the opinion that we can not afford relator the relief he asks.

For the reasons assigned, it is hereby ordered, adjudged and decreed that the orders heretofore granted herein are set aside, and it is now ordered that relator's application for a writ of *mandamus* be and the same is refused.

MR. JUSTICE MILLER—I dissent.