On Rehearing.
PROVO STY, J.
Our former decree in this case was set aside, and a rehearing granted. The case is here on exceptions of want of tender and no cause of action. The lower court overruled the exception of want of tender, and maintained that of no cause of action, and dismissed the suit.
The state sues to recover certain lands which, she alleges, the register of her land office was induced by the misrepresentations, deception, and fraud of the entrymen and patentees to sell at 25 cents per acre, as lands subject to regular tidal overflow, when, in point of fact, the lands were not of that character, but were of a class not legally salable at less than $1.25 per acre. It is alleged that the defendants “now claim to own these lands by indivisión by a chain of title emanating from said entrymen; that they are holders in bad faith.” It is-also alleged that the defendants have sold timber from said lands to the amount of $50,000, and that the state is entitled to an accounting and to judgment for said amount.
The exception of want of tender was properly overruled. Previous tender is not required in a suit to set aside a sale on the ground of fraud. Germaine v. Mallerich, 31 La. Ann. 371; Heirs of Burney v. Ludeling, 41 La. Ann. 627, 6 South. 248; Killelea v. Barrett, 37 La. Ann. 865; Self v. Taylor, 33 La. Ann. 769; Heirs of Wood v. Nicholls, 33 La. Ann. 744; Aronstein v. Irvine, 48 La. Ann. 301, 19 South. 131. Especially where an accounting is alleged to be due. 28 Ency. Pl. & Pr. 834.
Whether, in any case, previous tender can be required of the state, is a question not needing to be considered in this case.
We agree with defendants that the state cannot have both the property and the price; but this can be avoided by requiring the state to restore the price before she can take back the property. The decree in favor of the state was made thus conditional in the ease of State v. Gross Lake Shooting & Fishing Club, 123 La. 208, 48 South. 891. See, also, 24 A. & E. E. 621.
It is doubtless true that by such a decree the defendants would be left at a great disadvantage, because the lands are wild lands, producing no revenue, so that the mere pos *861 session of them can be of no benefit to defendants ; and yet the state might delay indefinitely to exercise her right of taking them back and returning the price, thus keeping the defendants indefinitely out of both the property and the price, and defendants would be remediless, since the state is not liable to be sued except with her permission. The answer to that argument is that the defendants have but themselves to blame if, as the result of their own fraud, their money has been paid into the State Treasury, whence it cannot be withdrawn without an act of the Legislature. See, in that connection: Moffat v. U. S., 112 U. S. 24, 5 Sup. Ct. 10, 28 L. Ed. 623; United States v. Trinidad Coal & Coking Co., 137 U. S. 160, 11 Sup. Ct. 57, 34 L. Ed. 640.
Coming to the exception of no cause of action, we have, on further consideration, reached the conclusion that it was properly maintained. Even though the patent itself should be invalid, by reason of the alleged fraud of the patentees, the several titles which constitute the chain of title by which the defendants are alleged to hold may be good, and each of them be an insurmountable barrier to the pretensions of the state. This is so because,'where fraud has been committed by the patentee, the government cannot recover the land from a third person who has acquired it for valuable consideration and without notice of the fraud. Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed. 162; Cochran v. Cobb, 43 Ark. 184; Johnson v. Smith, 21 Tex. 729; U. S. v. B. & M. R. R., 98 U. S. 334-342, 25 L. Ed. 198; Colorado Coal Co. v. U. S., 123 U. S. 313, 8 Sup. Ct. 131, 31 L. Ed. 182; U. S. v. Marshall Silver Mining Co., 129 U. S. 579, 9 Sup. Ct. 343, 32 L. Ed. 734; U. S. v. California Land Co., 148 U. S. 41, 13 Sup. Ct. 458, 37 L. Ed. 354; U. S. v. Winona R. R., 165 U. S. 479, 17 Sup. Ct. 368, 41 L. Ed. 789; U. S. v. Stinson, 187 U. S. 205, 25 Sup. Ct. 426, 49 L. Ed. 724; U. S. v. Detroit Lumber Co., 200 U. S. 321, 26 Sup. Ct. 282, 50 L. Ed. 499; U. S. v. Clark, 200 U. S. 601, 26 Sup. Ct. 340, 50 L. Ed. 613; Thomas v. Mead, 8 Mart. (N. S.) 342, 343, 19 Am. Dec. 187; Broussard v. Broussard, 45 La. Ann. 1085, 13 South. 699. Therefore, for showing a cause of action against the defendants, it was necessary that the petition should have shown that the acquisition of the property under each and every one of these several titles was without valuable consideration, or else with notice of the alleged fraud; in other words, connected these subsequent holders of the title with the fraud by proper allegations, and the petition has not made this showing.
It has contented itself with the allegation hereinabove transcribed, namely, that the defendants hold by a chain of title emanating from the patentees, and are holders in bad faith. This w'ould be a sufficient allegation if the fact of the title having emanated from the patentees were in itself sufficient to invalidate the several titles of the alleged chain of title; but such is not the case, as fully appears from the authorities just cited. The further fact needs to be alleged that under these several subsequent titles the property was acquired without valuable consideration, or else with notice of the alleged fraud; and this further fact is not alleged.
To say that the defendants are holders in bad faith is not to allege a fact, but merely a conclusion of law. It is merely to say that their title is invalid, and that they know it. A “holder in bad faith” is defined by the Civil Code to be he “who possesses as master, but who assumes this quality when he well knows that he has no title to the thing or that his title is vicious or defective.” Civ. Code, art. 3452. The validity, vel non, of a title, is the result which flows as a matter of law from the facts which render the title valid or invalid. To say to a defendant that his title is invalid is merely to convey to him the expression of a legal opinion on the condi *863 tion of his title. It is not to inform him of the facts from which the invalidity of his title is sought to be deduced.
The said allegation of the defendants beiDg holders in bad faith, or in other words, of their title being vicious or defective and their knowing it, being nothing more than the allegation of a conclusion of law, is no allegation at all, since the allegation of a conclusion of law is no allegation. It “does not aid a pleading.” 31 Cyc. 51. “Facts, not conclusions of law, must be alleged in pleadings.” Id. An exception of no cause of action admits the well-pleaded facts, not the conclusions of law, contained in the petition. 6 Eng. Pl. & Proc. 336; 31 Cyc. 333; Fertilizer Co. v. Wolf, 48 La. Ann. 631, 19 South. 558; State ex rel. v. Judge, 50 La. Ann. 266-273, 23 South. 839.
A pleader is not required to allege the evi■dentiary or intermediate facts; but he must at least allege the ultimate facts. Otherwise how can his adversary know what facts he must come prepared to disprove. In the instant case, the evidentiary or intermediate facts are all the circumstances from which the state seeks to draw the conclusion that the defendants and their several predecessors in title acquired the lands without valuable consideration, or else with notice of the alleged fraud. The ultimate fact is their having acquired the lands without valuable consideration, or else with notice of alleged fraud. This ultimate fact needed to be stated, because until it was stated there was nothing to show that the said titles, constituting the alleged chain of title of defendants, were not good. “Ultimate facts of necessity are conclusions drawn from intermediate and evidentiary facts; but legal conclusions cannot be pleaded as ultimate facts.” 31 Cyc. 70.
If the rule by which the allegation- of a conclusion of law is no allegation, but facts must be stated, is once departed from, it is not easy to see what rule is to be adopted in its place for' the guidance of courts in judging of the sufficiency of pleadings. The pleader is allowed to, dispense with the evidentiary or intermediate facts, and to content himself with alleging the ultimate facts; but further than this it is not possible to go, without losing sight of the principal object of pleading, which is to inform the adversary of what he must come prepared to meet with his evidence. It is not possible to go a step further and hold that even the ultimate facts may be dispensed with, provided a conclusion of law is alleged from which they may be deduced with a certain degree of cogency. The .question in every case would then resolve itself into whether the cogency in the particular case was sufficient to let the conclusion of law which was alleged do service for the facts which were not alleged, but left to be ascertained by a deductive process.
In contending that the petition sets forth a cause of action, the learned Attorney General relies upon the allegation that the defendants are holders in bad faith; but that allegation, as already shown in this opinion, is nothing more than the allegation of. a legal conclusion, and, as also shown, the allegation of a legal conclusion is no allegation and does not aid a pleading. Such an allegation stands as if not made. It does not aid a pleading. It is merely the legal opinion of the person who drafted the petition. Whether the defendants are holders in bad faith or not is a question which the court must decide, and must decide upon the facts, and, in order that the court may have an opportunity to decide that question, the facts necessary for its decision must be alleged.' The mere opinion of the Attorney General alleged in the petition that the defendants are holders in bad faith cannot -be accepted by the court in place of the facts upon which the court is to judge whether or not the defendants are holders in bad faith.
*865 If that allegation could be accepted as a substantive allegation, the petition would not be open to the exception of no cause of action, but merely to that of vagueness and generality. These two exceptions are not to be confounded. A petition which does allege all the facts upon which the cause of action depends may do so in terms so vague as not properly to convey to defendant all the information he needs for making his defense. The petition we are dealing with would have been of that character if it had alleged the ultimate fact of the defendants and their predecessors in title having acquired without consideration, or else with knowledge of the alleged fraud. Defendants could not then have pleaded no cause of action, but at most could have asked that the state be required to allege the facts intended to be relied on for contending that the property was thus acquired by them and their predecessors in title.
Pleadings were held insufficient to show a cause of action, or, which is the same thing, to authorize the introduction of evidence, in the following cases: Seghers’S Adm’r v. Lemaitre, 5 La. Ann. 263, where plaintiff sought to annul a lease on the ground that it had been executed “in fraudem legis and out of the usual course of business.” Compton v. Compton, 9 La. Ann. 499, where the allegation was that “defendant has been unfaithful to the marriage bed, and has committed acts of adultery since her marriage with defendant and since this suit.” Waddell v. Judson, 12 La. Ann. 13, and Louallier v. Castille, 14 La. Ann. 777, where the allegation was that “the requirements for sheriff’s sale were not complied with.” Landry v. Dickson, 7 La. Ann. 239, where the allegation was that the judgment had been unduly and improperly obtained. Rooks v. Williams, 13 La. Ann. 374, where the allegation was that the judgment had been obtained through fraud and other ill practices.
In Triscony v. Orr, 49 Cal. 617, it was held that it is not sufficient to allege that the defendant took the property unlawfully or fraudulently, but that the facts which constitute the unlawful taking or the fraud must be set out; and in Wing v. Hayden, 10 Bush (Ky.) 280, a case closely analogous to the one at bar, it was held that an allegation in an answer that a defendant is “an innocent purchaser” was insufficient as being a mere conclusion of law, and not equivalent to a statement that he had purchased without notice of the plaintiff’s homestead right. In Kellogg v. Tout, 65 Ind. 152, where, in a suit to redeem land from judicial sale, the averment was that there had been no valid appraisement of the rents and profits of the land sold and no valid appraisement of the fee simple of the land, the court said that no averment was made of any facts showing why the appraisements were invalid, and that therefore the pleading did no more than allege a conclusion of law. And the pleading was, in like manner, declared to be the mere statement of a legal conclusion in Smith v. Kaufman, 3 Okl. 571, 41 Pac. 722, where the allegation was that “the said P. W. Smith is not now, and never has been, legally appointed assignee of J. A. Newkirk.” And so likewise, in Thomas v. Desmond, 12 How. Prac. (N. Y. Sup. Ct.) 321, where the plaintiff alleged a contract made by defendant with a third person, and then alleged that he, the plaintiff, “is now the sole owner of the said demand against the said defendant,” without stating the facts showing how he became owner of the demand. From 31 Cyc. 61, w© quote as follows:
“Averments that the plaintiff is entitled to the proceeds of a sale; that an instrument conferred no right to the property; that a party was not invested with the legal ownership and control of an instrument; that a party is or is not entitled to the possession of the property; that one is or is not an innocent purchaser, or bona fide holder; that possession was taken in good faith; that plaintiff has a better title than defendant; that plaintiff is entitled to *867 a right of way; that a party became an owner of an instrument; that one has no right, title, or interest in certain land; that a judgment or certain goods became the property of defendant ; that defendant is in open, notorious, continuous, and adverse possession of the premises ; that the city took possession of property under a paramount title; that plaintiff has a special ownership in certain property; or that a note is a wife’s separate estate--are conclusions of law.”
In most of the foregoing cases the unalleged facts necessary to support the conclusion of law alleged could have been deduced with approximate certainty from the conclusion of law alleged; but the court unflinchingly enforced the rule that allegations for supporting the petition must be of facts, and not of conclusions of law, and applied the principle that the allegation of a conclusion of law is no allegation and does not aid a pleading.
But if, in any ease, the facts necessary to support the cause of action, when unalleged, will be eked out from a legal conclusion that is alleged, it will not be done in a case where the facts to be deduced would involve moral turpitude. Thus, in Gunning Gravel & Paving Co. v. City of New Orleans, 45 La. Ann. 916, 13 South. 182, which was an injunction suit to prevent the city of New Orleans from letting a paving contract in violation of the provision of the city charter requiring contracts to be let to the lowest bidder, apparently every necessary allegation was made, saving that the city officials were not charged in express terms with arbitrary conduct or improper motives, and yet the court said:
“Only a few days since, in the case of Hughes v. Murdock, 45 La. Ann. 935, 13 South. 182, we cited the well-recognized doctrine in pleading that up to the judgment the pleadings will be taken most strongly against the pleader, and that unknown, unrecited facts would not be assumed in his favor, particularly in the face of an adverse ruling of the district judge. The case at bar falls directly under that principle. The plaintiff asks us to ‘assume,’ as an absolutely necessary consequence of its being the lowest bidder for the contract, that it should be awarded to it, and it asks us to assume that fact in presence of the repeated declarations of courts .everywhere that sworn officers will be assumed to have done their duty, certainly at least until they have been ‘alleged’ to have done otherwise. There is not one single word in plaintiff’s petition accusing the common council of New Orleans with having acted arbitrarily, fraudulently, or improperly in any manner. The plaintiff relies upon the naked facts advanced by it that its bid was the lowest, and that its material was equal or superior to that of the other bidders, and that it could furnish security. We are left absolutely in the dark as to the reasons upon which the council acted. We are bound, in the absence of direct charges and statements of facts, to presume that their action was honest and legal. We cannot eke out a case for the plaintiff by inference of wrongdoing and make suspicions and conjectures take the place of allegations. Whilst it is possible there was such wrongdoing, it might also, well be that the council acted after a very strict examination into all the facts and circumstances which it had the legal right to. examine info in order to determine whether plaintiff’s bid was a proper one or not, and that their conclusions thereon are justified and right. It may well be that, although the plaintiff ‘alleges’ his ability to furnish security, he may in fact never have tendered it at all, or that the security furnished was insufficient. Plaintiff’s petition is silent on these points. If the council was guilty of wrongdoing, plaintiff should have directly so alleged, and stated facts and circumstances to show in what way and from, what cause that wrongdoing arose. We repeat here what we said in the Hughes Case, that when a plaintiff selects an act as the object of his attack which is not per se necessarily wrongful and illegal, but which may exist consistently with honesty, fair dealing, and legality, it is the duty of the attacking party to set out specially the facts which would give to the act an illegal or wrongful character.”
These observations of the court were made in a case which was being disposed of on the face of the petition; that is to say, the question was as to whether or not the petition showed a cause of action. Needless to point out the appositeness of the foregoing remarks to the case at bar, where the fact left to be assumed or deduced is fraud on the" part of defendants and their predecessors in title. See, on the same line: U. S. v. Throckmorton, 98 U. S. 70, 25 L. Ed. 93; Marguez v. Frisbie, 101 U. S. 478, 25 L. Ed. 800; U. S. v. Atherton, 102 U. S. 372, 20 L. Ed. 213 Maxwell v. Land-Grant Case, 121 U. S. 379, 7 Sup. Ct. 1015, 30 L. Ed. 949.
In behalf of the state, it is asked that the- *869 suit be not dismissed, but remanded with leave to amend, and the case of McCubbin v. Hastings, 27 La. Ann. 715, is cited. That decision was expressly overruled in Burbank v. Harris, 32 La. Ann. 395. See, also, Abadie v. Berges, 41 La. Ann. 281, 6 South. 529. Unless a cause of action is alleged, there is no suit, and hence nothing to amend. There is nothing but an empty petition.
Judgment affirmed, without prejudice, however, to the right of the state to renew the suit on proper allegations.
BREAUX, C. J., concurs in the decree.
MONROE, J.
I have concluded, after further considering the point presented, that it cannot fairly be held that any other knowledge of the facts, which would render their title void, is charged to the defendants than knowledge of the original fraud, perpetrated by the entryman, and that, in order to disclose a cause of action, the petition should have alleged that each successive holder of the title possessed the same knowledge.