## White & Trufant v. Cazenave et al.

An appeal will lie from an interlocutory order dissolving an injunction in accordance with the provisions of Article 307 of the Code of Practice, when the facts show that such an order will work irreparable injury to the plaintiff in injunction.

Article 566 of the Code of Practice allows an appeal in all cases where an interlocutory order may work an irreparable injury. *Held:* That an order which necessarily compels a party, in order to protect his rights, to institute another suit for the same cause of action, is one from which an appeal will lie under this Article of the Code of Practice.

When an appeal is taken from an *ex parte* order, under Article 307 of the Code of Practice, dissolving an injunction, the necessary consequence of maintaining the appeal is to reverse the order dissolving the injunction.

| | |
|---|---|
| 14 | 57 |
| 46 | 82 |
| 14 | 57 |
| 49 | 342 |
| 49 | 584 |
| 14 | 57 |
| 50 | 272 |
| 14 | 57 |
| 52 | 105 |
| 52 | 1193 |
| f52 | 1283 |
| 52 | 1284 |
| 14 | 57 |
| 113 | 563 |
| 14 | 57 |
| d120 | 746 |

APPEAL from the Fourth District Court of New Orleans, *Price*, J. *Benjamin, Bradford & Finney*, for plaintiffs and appellants. *Roselius* and *Collens*, for defendants.

Merrick, C. J. " This suit was brought to enforce a specific performance of a contract between the plaintiffs, *White & Trufant*, and *Isaac Osgood*, one of the defendants.

" The plaintiffs allege that on the 28th April, 1848, they purchased from *Samuel Packwood* a plantation and slaves, situated in the parish of Plaquemines, for $225,000 ; that afterwards, on the 11th March, 1853, they entered into a private agreement with *Isaac Osgood*, (carried out by an authentic act, passed on the 17th March, 1853,) by which they sold to *Osgood* an undivided moiety of the plantation and slaves for $65,000 cash, but with the further condition that he should advance the necessary funds to take up their notes in favor of the vendor, maturing in 1854, 1855 and 1856, amounting together to $77,771 30, and with the express stipulation and agreement that they should cultivate and manage the plantation, and that their one-half part of the crops should be handed over to said *Osgood*, who was to sell the same with his own half for the best price he could obtain, and appropriate the proceeds to the repayment of his advances, till the final liquidation of the amount, with interest at eight per cent. per annum.

" That this sale was made to *Osgood* at his own instance, and in pursuance of his unsolicited overtures : that *Osgood* was a man of great wealth and of high and established credit, and the plaintiffs consented to the sale for the inadequate price above stated, in order to secure the association and aid of a capitalist of ample resources to make the requisite advances, and allow them time by the assiduous devotion of their industry to the management of the plantation, to redeem their undivided half-interest therein.

" That the contract was in all things duly and faithfully complied with, till in the commencement of the year 1855, the said *Isaac Osgood*, apparently supposing that the plaintiffs were entirely in his power and at his mercy, repudiated his agreement, for the purpose of evicting them from their remaining interest in the plantation, which he might thus acquire at a reduced price, or of compelling them to submit to still more onerous terms, which he might dictate."

" That, accordingly, he refused to make any advance to take up the note held by *Samuel Packwood*, maturing on the 1st of March, 1855, but that his co-defendant, *P. A. D. Cazenave*, took up the note, and received a subrogation from *Packwood* to his mortgage on the plantation, and then applied for an order of

8

seizure and sale, under which the plantation and slaves were adjudicated to him, on the 2d of June, 1855, for $122,500.

"That while these proceedings were in progress, the plaintiffs, finding themselves abandoned and betrayed by *Osgood*, and unable, in their unexpected distress and difficulty, to make any other arrangements, entered into an agreement with the said *Cazenave*, whereby it was stipulated and agreed that he should reconvey the plantation to them for $191,520, payable in ten annual instalments, with interest at eight per cent. per annum ; but with the condition that if they should be unable to make the first payment of $20,520, due on the 15th of March, 1856, the agreement should be null and void, and the plantation should remain the property of said *Cazenave*.

"That the plaintiffs made the stipulated payment of $20,520, on the 16th of March, 1856, and received a reconveyance of the plantation and slaves on the terms and conditions of the agreement set forth.

"That as plaintiffs are now informed and believe, the said *Cazenave* acted in the premises at the suggestion and for the account of *Osgood* ; that he was interposed for the purpose of enabling *Osgood* to evade and defeat the rights of the plaintiffs under and in virtue of his several engagements with them.

"And finally, the plaintiffs aver their readiness to carry out the agreements with *Osgood*, and pray that a specific performance thereof be decreed and enforced against him.

"On filing their petition, the plaintiffs, upon their proper affidavit and bond, obtained an injunction against both *Cazenave* and *Osgood*, restraining them from parting with, or disposing of, or taking any proceedings at law, for the enforcement of the payment of the mortgage notes received by *Cazenave* for the retransfer above stated, against the plantation and slaves so retransferred, till the further order of the court."

On the 31st of March, 1858, the defendant, *Cazenave*, applied, by petition, to the Judge of the Fourth District Court, who granted the injunction, for a dissolution of the same, so far as he was restrained from taking proceedings at law for the inforcement of the three notes described in plaintiffs' petition, upon giving bond in conformity to Article 307 of the Code of Practice.

The order dissolving the injunction was granted him, on executing his bond in favor of plaintiffs in the sum of $25,000.

*Immediately* after giving bond, it seems, *Cazenave* obtained an order of seizure and sale against the plaintiffs on the notes so released. The plaintiffs thereupon applied for and obtained a suspensive appeal from the *ex parte* orders dissolving the injunction.

The defendant moved to dismiss the appeal on the ground that the order cannot work an irreparable injury.

It is urged by defendants, that if an appeal of this kind is favored, the whole object of Art. 307 C. P. would be defeated ; that "it would be vain for the District Judge to grant the dissolution of an injunction under that article ; to exercise the discretion there vested, for the interposition of an appeal would at once render judicial action nugatory, though the law, *on its face*, contemplates no appeal ; but, on the contrary, the evident intention is to relieve the party from interruption."

The answer to this is, that the Article of the Code of Practice only confers on the District Court the discretion to dissolve the injunction on the party's giving bond, *where the act prohibited is not such as may work an irreparable injury.*

Now, where the District Judge, through error, embraces, as within this article, a case not contemplated by it, one where the prohibited act may work an irreparable injury, an appeal must lie by the express terms of Art. 566 of the Code of Practice.

In the case of *De La Croix* v. *Villéré*, 11 An. 39, we set aside a similar order, being of the opinion that the act prohibited might, if executed, work irreparable injury.

The question then must be determined by the facts and circumstances of each case, and in order to test the plaintiffs' right to the present appeal, we are forced to consider whether the court erred in granting the order. If it did err, an appeal lies by the very terms of Articles 307 and 566. If it did not err, the appeal must be dismissed.

In the consideration of the question before us, the allegations of the plaintiffs' petition must be taken as true, and *Cazenave* must be viewed as a person interposed for *Osgood ; Osgood* should be considered the owner of the notes, and that the order of seizure and sale issued in *Cazenave's* name for his benefit.

Now the plaintiffs would have the right to oppose the same defence to the order of seizure and sale in the parish of Plaquemines that they do to the notes here, and obtain the same judgment there that they are entitled to in this suit, and it may be urged that the prosecution of a legal right can never work an irreparable injury, for the party sued may offer an issue before the court, and adduce his proofs and obtain justice before the one court as well as the other. This may be true as a general proposition, but, in the case before us, we have to consider the petition as true, as just observed, and it then follows that *Cazenave* has instituted, or may institute, an order of seizure and sale upon notes fraudulently obtained, and which do not rightfully belong to him, the consequence of which is to drive the party to an injunction or opposition, or run the risk of a sale of the plantation to some third party, and thus defeat the plaintiff's demand for a specific performance altogether.

No argument is required to show that the latter consequence would be an irreparable injury involving as it does the loss or transfer of a plantation. It has also been held by this court in several cases, that where the consequences of an interlocutory order are such, that they cannot be remedied by a final decree, and the party will be driven to another action to obtain his rights, it is an irreparable injury, from which he may appeal. The obtaining of executory process in the parish of Plaquemines is intended to obtain satisfaction of the notes by the sale of the plantation. If defendant succeeds, his promissory notes have been paid, and their return on the final decree in this case will be the return of so much waste paper. Plaintiffs, to maintain their rights, will therefore be driven to another injunction, in which they will be forced to set up the same issues and demand the same judgment as they do in this case. But what will prevent the defendant from dissolving that injunction in the same manner and upon precisely the same grounds as in this ? It is but another step in the proceeding. The Article 566 of the Code of Practice allows an appeal where an order *may* work an irreparable injury and it appears to us that an order which necessarily compels a party, in order to protect his rights, to institute another suit for the same cause of action is covered by the Article. See case of the *State* v. *Judge of Fifth District Court*, 12 An. 455, and authorities there cited, viz : 6 L. R. 435 ; 14 L. R. 245 ; 12 L. R. 137, 148 ; 15 L. R. 481 ; 2 Rob. 342.

We do not consider that the injunction has the effect of preventing defendant

from suing upon his notes, for he can set them up in the present suit by way of a reconventional demand against the plaintiff, and demand judgment thereon   See Acts 1839, p. 64.

The cases in 12 R. and 2d and 4th An., cited by the defendant, were considered in the case in 11 An. 39.

It is, therefore, ordered, that the motion to dismiss the appeal in this case be overruled.

SPOFFORD, J., took no part in this decision.

---

### SAME CASE—FINAL DECISION.

LAND, J.   This is an appeal from an *ex parte* order of the District Judge under Article 307 of the Code of Practice, dissolving the writ of injunction issued in this case.

A motion was made to dismiss the appeal, and the motion was overruled.

The reversal of the order dissolving the injunction is a necessary consequence of the judgment maintaining the appeal.

It is, therefore, ordered, adjudged and decreed, that the order of the District Judge, dissolving the writ of injunction in this case, be annulled, avoided and reversed, and that said writ of injunction be reinstated and declared in full force, and that the cause be remanded to the lower court for further proceedings according to law, and that the defendants and appellees pay the costs of this appeal.