State ex rel. Yale et al. vs. Judge, etc.

## No. 10,372.

STATE OF LOUISIANA EX REL. R. H. YALE ET AL. VS. HENRY L. DUFFEL, JUDGE, ETC.

1. A party, denying a right of drain claimed and exercised by an adjoining proprietor, and having applied to the courts by an injunction suit to settle the disputed right, is bound to respect the *statu quo* during the pendency of the suit.

2. The dissolution on bond of an injunction operates as an authority to perform the prohibited act during the pendency of the suit subject to responsibility under the bond.

3. In the cases provided for by Article 298, C. P., and others similar, the judge has no discretion, but is bound to grant the application for injunction when made in conformity to law.

4. When a defendant obstructs the plaintiff in the enjoyment of a *real right*, which he claims and has exercised for many years, as by fencing a common passage way, or building a levee across a draining course, the latter is entitled to a prohibitory injunction restraining disturbance and to a mandatory order for the removal of the obstruction, which has been built pending litigation and without knowledge of plaintiff.

APPLICATION for Mandamus.

*E. N. Pugh* for the Relators.

*R. N. Sims* and *Fred. Duffel* for the Respondent.

The opinion of the Court was delivered by

FENNER, J.   Relators and J. E. St. Martin are owners of contiguous plantations, that of relators being known as the "Home," and that of St. Martin as the "Arlington."

Relators claim, and St. Martin denies, that the "Home" is entitled to a servitude of drain of its waters over the lands of "Arlington" to conduct them to a natural water course known as the Bayou "Joe Rose," which is alleged to be the main and necessary outlet for carrying off the surplus water of that section.

While there is a dispute as to the *right* there is no dispute that the "Home" had, for many years exercised and enjoyed the privilege as a *fact* and had built levees to collect its waters at a particular point and had constructed a large and expensive draining machine which pumped its water on the lands of "Arlington," which drainage system had also been in operation for several years.

Such was the *status quo*, when, on the 5th of April, 1889, St. Martin resorted to the court of the domicil, presided over by the respondent judge, and invoked a judicial settlement of the contested right, by a petition against relators in which, on appropriate allegations denying the servitude claimed by the latter and setting up the illegality of their

acts in the premises, they applied for and obtained a writ of injunction prohibiting relators from operating their draining machine, and prayed for a final judgment perpetuating said injunction and ordering relators forever to desist from draining over the "Arlington" Plantation.

The relators, defendants in said suit, obtained order dissolving said injunction on a bond to answer for all damages in case of judgment against them.

The effect of this dissolution was to restore the *status* existing prior to the injunction and to secure to relators the right to continue the operation of their draining machine subject to the condition, secured by the bond, of paying damages if found, by the final decree, to be illegal. State ex rel. Bell vs. Judge, 36 Ann. 886.

It was the plain duty of both the parties, whose contested rights had thus passed *ingremio legis*, to abide the orderly determination thereof, and, in the meanwhile, to respect the *status quo*.

But St. Martin was not content to do this. He was unwilling to await the judicial determination of his right to an injunction and to rely on the bond to recoup him for damages sustained in the meantime. He takes the case out of court and practically issues an injunction of his own against the operation of relator's draining machine by constructing a levee in front of said machine and across the route of the waters pumped therefrom, the effect of which is to block and destroy the drainage and, as alleged, to retain the water on relator's place and to destroy its valuable crops. Although the date at which this levee was built is not positively fixed, it was constructed after the institution of the injunction suit, and done without the knowledge of relators.

Under these circumstances, relators appealed to the court for an injunction prohibiting and restraining the defendant, St. Martin, from disturbing them in the free use and enjoyment of the right of drain through the "Arlington" plantation to the Bayou Joe Rose, coupled with a prayer for an order commanding the sheriff to demolish and remove the obstructing levee.

The respondent judge was willing, it appears, to grant a rule *nisi*, but on relators' asking him to act by either granting or refusing the injunction, he entered his official order refusing the same. We have no concern with anything except the legality of this official act.

The relators invoke the exercise of our supervisory jurisdiction in the form of a mandamus directing the judge to grant the order for an injunction as prayed for.

So far as the injunction restraining the disturbance is concerned, the case falls within the letter of Par. 5 of Article 298 C. P., as one of the

cases in which the article says, " the injunction must be granted," viz: " When the defendant disturbs the plaintiff in the actual and real possession which such plaintiff has had for more than one year, either of a real estate or of a *real right* of which he claims either the ownership, the possession or the enjoyment."

The servitude of drain is a *real right*, of which the relators claim the ownership, and of which they had undoubtedly enjoyed the actual and real possession for a number of years. They presented a petition complying with all legal requisites of allegation and affidavit, and avowed their readiness to give bond conditioned according to law in such sum as the judge might fix.

We have held that in cases arising under Art. 303 C. P., the judge is vested with a legal discretion to grant or refuse an injunction, which will not be supervisorily interfered with unless his action be manifestly arbitrary. N. O. vs. Telephone Co., 37 Ann. 571.

But in the cases provided for by Art. 298 and others similar, the jurisprudence is perfectly settled that the judge has no such discretion and is bound to grant the application when made in conformity to the requirements of law. Beebe vs. Guinault, 29 Ann. 795; State ex rel. Behan vs. Jude, 32 Ann. 1276; Slaughterhouse Co. vs. Larrieux, 30 Ann. 799; State ex rel. Gaynor vs. Judge, 38 Ann. 924; State ex rel. Jacobs vs. Judge, 40 Ann. 206.

Therefore, as to this part of the relief asked, his absolute duty to grant it was beyond dispute.

We consider that the additional order prayed for to remove the levee which operates the disturbance was a natural and necessary corollary and concomitant of the injunction against disturbance.

The law, in express terms, authorizes the injunction when "the defendant *disturbs* the plaintiff" in the possession of his real right. It is granted as a remedy for actual, as well as threatened, disturbance. It contemplates an effective relief, and, manifestly, the injunction would be *brutum fulmen* if the obstruction, which created the very disturbance complained of and enjoined, were permitted to remain and thus to paralyse its effect and to perpetuate the disturbance which the injunction forbids.

The case is on all fours with that of McDonough vs. Calloway, 7 Rob. 442. There the plaintiff claimed a right of passage through a certain common alleyway, and alleged that the defendant had illegally fenced it up so as to bar his passage. His prayer was " that the judge will order the obstructions to the use of said passage to be immediately demolished and removed, that an injunction be issued enjoining defendant

City vs. Railroad Companies.

not to disturb him in the use of the said common way," etc. The lower judge granted the injunction against disturbance, but refused the order prayed for to remove the obstruction. This court decided that, in such refusal, he committed error. After giving reasons thoroughly applicable to the instant case, illustrating the vanity of the injunction without the order, the opinion concludes with this significant language: "the law has not left the parties remediless in such cases nor the courts without power for the correction of such evils, and we think the judge below should at once have granted an order to have the obstruction removed by the sheriff." See also: Pierce vs. City, 18 Ann. 242; Dudley vs. Tilton, 14 Ann. 286.

The later case of Black vs. Good Intent Co., 31 Ann., reviewed Mc-Donough's case above cited, and, as we understand the decision, approved and confirmed it, as an exception to the general rule expounded in the body of the opinion that the writ of injunction in the mandatory form cannot be issued on an *ex parte* application but only after hearing. The exception is thus stated in the language of the opinion: "When, a prohibitory writ having issued restraining a party from obstructing the exercise of a right, the obstruction may be commanded to be removed because its continuance effects the very injury he was prohibited from effecting."

In the instant case, it was the clear duty of the judge to grant the prohibitory injunction prayed for, and the consequent duty to order the removal of the obstruction arose simultaneously. We will not say that the judge, having first granted the prohibitory injunction prayed for, might not have ordered the defendant to show cause why the mandatory order of removal should not be granted. But under such showing, the inquiry would not have been as to the legal rights of the parties, but simply as to the fact whether or not the levee did obstruct the drainage. As, however, there is no question raised as to the fact of obstruction, and as the order of removal only contemplates a removal of the levee, as such an obstruction, there seems to be no occasion for modifying the mandamus as prayed for.

It is, therefore, ordered and decreed that the provisional mandamus herein issued be now made peremptory.