(37 South. 476.)

No. 15,383.

STATE ex rel. BOARD OF LIQUIDATION OF CITY DEBT v. SOMMER-
VILLE, Judge, et al.

(Oct. 28, 1904.)

INJUNCTION—DISSOLUTION—RIGHT TO APPEAL
—BOND.

1. The title to property involved is at issue; also the right to the proceeds of its sale.
The injunction applied for was granted after hearing on rule.
It was dissolved on bond.
Plaintiff in injunction is entitled to an appeal from the order allowing the injunction to be dissolved on bond.

(Syllabus by the Court.)

Application by the state, on the relation of the board of liquidation of the city debt, for writs of prohibition, certiorari, and mandamus to W. B. Sommerville, judge of Division D, acting for Fred D. King, judge of Division B, and others. Writs granted.

Branch K. Miller, for relator. Respondent judge, pro se.

BREAUX, C. J. Relator applies for relief from an order of the district court refusing to grant it a suspensive appeal from an interlocutory judgment rendered on September 12, 1904, permitting the city of New Orleans, defendant (asserted owner of the property she sought to sell), to dissolve relator's injunction on bond.

The following is a statement with reference to the proceedings leading to the court's action in refusing to grant said appeal. The city of New Orleans had taken steps to sell certain property, consisting of sugar sheds, B and E. Relator, the board of liquidation of the city debt, claiming to be owner of these sheds, instituted suit against the city of New Orleans and her comptroller, setting up title to this property.

This title is claimed by the said relator by virtue of the provisions of section 5 of Act No. 133, p. 181, of 1880, section 3 of Act No. 67 of 1884, and Act No. 110, p. 144, of 1890, the constitutional amendment of 1892, and article 314 of the Constitution of 1898; and on this plaintiff petitioned for an injunction to prevent the city of New Orleans from selling the property, and upon its petition a rule issued against the defendant city to show cause why the writ of injunction should not be issued to prohibit the sale.

A short time thereafter, after having heard the parties on the trial of the rule, the court made an order granting the injunction.

On the day that this order was granted, the defendant city of New Orleans, availing herself of the provisions of article 307 of the Code of Practice, submitted to the court an application to dissolve the injunction on bond, which was granted.

The court dissolved the writ on condition that defendant furnish bond. Compliance with that part of the said condition was not required, in view of the exemption of defendant from furnishing bond.

Relator then filed a petition for a suspensive appeal from the order dissolving the injunction on bond, returnable to this court. The petition for and the order of appeal were refused on the ground that the bonding of the injunction did not cause an "irreparable injury," and hence that it was not appealable.

The contention of the relator is that the order allowing the defendant to bond the injunction would result in a sale of the property—would cause irreparable injury—for it, according to relator, in effect, would allow the comptroller to sell the property for the city pending relator's suit to be recognized as owner.

Relator sets forth that in consequence it is entitled to a writ of prohibition enjoining

the respondent court from doing anything further in execution of the interlocutory order in question, dissolving the injunction on bond; and relator states that it is also entitled to a writ of mandamus, ordering the court to allow a suspensive appeal from the order dissolving the injunction on bond.

We are informed by the record that originally the court issued the injunction on a technicality invoked by plaintiff in injunction, relator here, and that it may well be that on the trial of the case on its merits the city may be able to meet and overcome this technicality and obtain a judgment, but that in the face of the papers, as set forth by the district court in its written reasons for issuing the preliminary injunction, the board of liquidation, relator here, was entitled to the writ, and for that reason the injunction applied for by the board of liquidation was allowed.

But afterward, on the application of the city of New Orleans to dissolve the writ of injunction on bond, as before mentioned, the court arrived at the conclusion that the writ would not cause irreparable damages, and granted the order to dissolve on bond, and refused the motion of relator for an appeal.

The ground urged by respondent is that there will be no irreparable injury, because the property is not owned, as claimed, by the board of liquidation, and that the board is not interested in whatever disposition may be made of it. We have to some extent looked into the question of the title claimed.

The board of liquidation is one of the subordinate corporations of the city.

The police board, the sewerage and water board, and others, together with the board of liquidation, are respectively invested with separate and distinct authority.

The first statute upon the subject created a syndicate which shall "constitute a board of liquidation of the city debt," and "the said board shall have exclusive control and direction of all matters relating to the bonded debt of the city of New Orleans." Act No. 133, p. 181, of 1880.

The board was to receive and control "all the property of the city of New Orleans, both real and personal, not dedicated to public use," and the board was empowered by this legislative act to dispose of this property on such terms and conditions as "deemed favorable"; the proceeds of the sale to be deposited with the fiscal agent of the board to the credit of the "city debt fund."

In the year 1884, Act No. 67 (another law) was enacted upon the subject, and amending the original act (of 1880) in some respects.

It again expressly made it the duty of the city of New Orleans to turn over and transfer to the board of liquidation all her property not dedicated to public use. A provision of the act sets forth that in the sale of batture property, which is herein included, "the right of the city to all future accretions shall be reserved, all assets of said city realized and to be realized, except such assets and revenues of said city anterior to the year 1879"; and the board, as in the prior act, is authorized to dispose of "property not dedicated to public use."

In the subsequent acts (one of the number, that of the year 1890, No. 110, was made part of the Constitution of 1879) this feature of the laws, to which we have just referred, was recognized and we may say it was re-enacted and re-enacted. The purpose originally of the legislative transfer of property not dedicated to public use was to pay from the proceeds of the sale of this property certain specified indebtedness of the city. After the enactment of the law of 1880, other and complete provisions were adopted by the lawmaking power in order, without reference to the property ordered to be transferred to the board of liquidation, as before mentioned, to enable said board to pay the city's indebtedness before mentioned.

That provision consists of a tax of 1 per cent., or part thereof, imposed upon the prop-

erty taxpayers of the city. One of the contentions is that the city is relieved from the necessity of recognizing the legislative transfer, because the 1 per cent. tax in question is amply sufficient to pay the bonds held against the city, issued under said acts—in other words, that, this provision having been made for their payment, there is no longer any necessity for the transfer of the property; that it is not needed to pay the bonded indebtedness in question.

This contention of the learned city attorney would scarcely justify us at this time, and with the light before us, in setting aside the plain provision of the statutes on the subject of the transfer of property to the board of liquidation.

It devolves upon us at this time to interpret as we have, and not to set it aside on the ground of inconsistency, or on the ground of excessive provision made to pay certain debts, before it is made evident and very plain that it could not have been the legislative intent to transfer property of the city not dedicated to public use.

Another proposition of the city attorney in opposition to the demand of the board of liquidation for the writs applied for is that section 5 of Act No. 133, p. 181, of 1880, and section 3 of Act No. 67 of 1884, did not have the effect of prohibiting the city of New Orleans from acquiring by private title real estate.

We will not dwell upon the subject at any length at this time. It may well be that the city hereafter in the course of this litigation will meet with no difficulty in sustaining her defense.

At this time the issue must be limited to the interest relator may have, as made to appear for this hearing.

The question is not before us on the merits. We do not intend to prejudge the issue. We are convinced that, under the circumstances, the status quo should be maintained.

This court held in one of its decisions:.

"The dissolution on bond of an injunction operates as authority to perform the prohibited act during the pendency of the suit, subject to the responsibility on the bond." State ex rel. Yale et al. v. Judge, 41 La. Ann. 516, 6 South. 512.

The whole situation would be changed if it were now concluded by us that the city had the right to sell the property. She had not furnished a bond (being exempt from that requirement), and in some respect the issues would be as if no injunction had ever been taken. That is not the intention of the law regulating judicial proceedings.

Plaintiff (relator here) is entitled to an appeal, if it may be that there will be irreparable loss.

State ex rel. Violett et al. v. Judge, 46 La. Ann. 78, 14 South. 423; State ex rel. Lehman v. Judge et al., 46 La. Ann. 163, 15 South. 283; Union Oil Co. v. Leathers et al., 50 La. Ann. 390, 23 South. 1013; State ex rel. Oilmills v. Judge and Leathers et al., 50 La. Ann. 260, 23 South. 839.

In Weil v. Schwartz, 49 La. Ann. 582, 21 South. 859, the court attached importance to the oath of plaintiff in injunction, setting out "irreparable injury." In our case the oath of irreparable injury has, in addition, some evidence in its support.

Two corporations are contending for the right involved. One represents an interest in which one group of creditors are concerned, and the other, the board of liquidators, represents another group of creditors concerned. If the property be sold as belonging to the former, then the interest of the latter will be prejudiced, if the latter be entitled to the property and the proceeds of its sale.

If there be a cloud on the title at the time it is offered for sale, it is reasonable to infer that the property will be adjudicated for less than it would bring if it were understood to whom the property and the proceeds of the sale belong.

It has been several times stated in deci-

sions that every case, as relates to irreparable injury, must stand or fall on its particular facts. White v. Cazenave, 14 La. Ann. 57.

The facts are of such a nature in this matter between public corporations relating to a public right that we have concluded to decide in favor of the appeal. We recall that the right of appeal should not be denied unless it is made to appear positively that the party applying therefor has no ground upon which to stand for a hearing on the appeal. If we err, it will be on the safe side, for the defendant city is at liberty on appeal to urge all its defenses.

For reasons assigned, the writ nisi issued is made absolute; prohibition and mandamus will issue as prayed for; nothing further will be done in executing the said interlocutory order; and, in addition, let the writ of mandamus be made perpetual, as relates to the interlocutory order or judgment in question, and let the judge of the district court grant the appeal as prayed for.