(86 South. 718)

No. 24310.

BARROW v. DUPLANTIS et al.

In re BARROW.

(Nov. 3, 1920. Rehearing Denied Nov. 29, 1920.)

*(Syllabus by the Court.)*

1. **Appeal and error** &#x2190;71(3) — **Judgment in separate proceeding pending relator's original suit held so far final as to entitle him to a suspensive appeal.**

Where, pending a suit for the dissolution and settlement of a planting partnership, based on a contract which includes a lease of the plantation by one of the partners to the firm, a separate proceeding is instituted, under the title and number of the original suit, but for the assertion of a distinct right concerning which an issue arose after the institution of such original suit, and a judgment, dissolving an injunction obtained in such proceeding is rendered, which by its operation will finally prevent the exercise of the right so asserted, such judgment may be regarded as so far final as to entitle the plaintiff to a suspensive appeal therefrom, though it does not dispose of all the issues involved in the original suit.

2. **Appeal and error** &#x2190;73(2)—**Where remedy is inadequate and the injury irreparable, a suspensive appeal allowed from dissolution of injunction.**

Where an injunction is dissolved, on motion and without the giving of a bond, leaving the party enjoined free to do that of which the complaint was made, and the doing of which may inflict pecuniary loss upon the complainant, the extent of which cannot be determined, with no other recourse save such as may be found in a claim for damages, against persons not shown to be able to respond, the injury may be irreparable, and a suspensive appeal should be allowed from the judgment of dissolution.

Original application by Robert R. Barrow for a preliminary injunction, enjoining and prohibiting C. A. Duplantis from interfering with the management of one Dillard, as manager of a plantation for the firm of Barrow & Duplantis, and prohibiting and enjoining him from drawing against the partnership funds to the firm's credit in the Bank of Houma, and prohibiting that Bank from paying any of said funds to the order of Duplantis, individually or as said administrator of H. C. Duplantis, and for prohibition against H. M. Wallis, Jr., Judge of the Twentieth Judicial District, from acting on a certain judgment dissolving an injunction obtained by relator and for mandamus directing said judge to grant a suspensive appeal therefrom. Writ of mandamus issued as prayed for, on terms, and rights of the litigants reserved for consideration on the merits.

See, also, 147 La. 461, 85 South. 205.

Harris Gagne, of Houma, for relator.

Caillouet & Caillouet, of Thibodaux, for respondents.

MONROE, C. J. Relator prays that the judge of the Twentieth judicial district court and the litigants herein made respondents be prohibited from acting under a certain judgment dissolving an injunction which he had obtained, and that a writ of mandamus be issued, directing the judge to grant a suspensive appeal therefrom; the circumstances out of which this application has arisen being as follows:

Many years ago, relator entered into a contract of partnership and lease with H. Clay Duplantis, which was renewed from time to time, and the term of the last renewal of which will expire with the current year. The contract declares that the partnership is formed for the cultivating, in sugar and other products, of Myrtle Grove plantation, the property of Barrow; that Duplantis shall exercise and maintain a general and strict supervision over the plantation operations, and shall devote his best energies and skill and exclusive time to their successful prosecution; that he shall keep a faithful account of the plantation expenses, each party to furnish monthly one-half thereof, and the books to be kept by a regular bookkeeper, chosen by said parties; that for his services, as over-

seer and manager, he shall receive $1,800 per year, and that Barrow shall receive $5,000 per year for rent of the plantation, with buildings, etc.; that the sugarhouse and refinery shall be kept constantly insured, and in case of loss the proceeds of the insurance shall, under certain circumstances, be devoted to their rebuilding; that the crops shall be equally divided on the plantation, should the parties see proper, and each partner shall be at liberty to dispose of his share as he pleases, provided there are no joint notes or obligations to be met; and that all losses are to be borne by the parties in equal proportions. It contains, among others, the following articles (quoting so much as seems pertinent to this case) to wit:

"Art. 13. * * * It is understood and agreed that, at the expiration of this contract, there shall be left on the * * * plantation, properly put down, sufficient seed cane to plant 300 acres of land, which shall be a part consideration for the use of the plantation.

"Art. 14. In case of the death of the said Duplantis, his heirs and legal representatives shall furnish a man to take his place, subject to Barrow's approval; the heirs or legal representatives of said Duplantis being bound to pay the wages or services of said manager; and the said Barrow agrees and binds himself to continue the partnership to its full term with the said manager, so selected to replace said Duplantis."

"Art. 17. It is distinctly understood and agreed that the plantation, the refinery and everything appertaining thereto shall be kept in good order and condition and repair and is to be turned over to said Barrow at the expiration of the partnership in like good condition."

H. Clay Duplantis died in September, 1919, and his son, Caliste A, Duplantis, was appointed administrator of his estate, after which, in that capacity and as representing himself and his coheirs, he selected J. Q. Dillard to take the place of the decedent, as provided by article 14 of the contract, and the selection was approved by Barrow; but, within a short time thereafter, in consequence of a disagreement as to the status and authority of Dillard and the relations of the Duplantis heirs to the contract, Barrow brought suit for the dissolution of the partnership, praying for the sequestration of its property and the appointment of a sequestrator or receiver to carry on the business until the end of the term, which writ and appointment having been denied by the district court, and Barrow having been denied a writ of mandamus in the matter by this court (147 La. 461, 85 South. 205), the suit for the dissolution of the partnership was left pending, with no definite understanding upon the question of the right of control of the business. In that connection, and as throwing some further light upon the present situation, we make the following excerpt from the original petition for the dissolution of the partnership, which is annexed to the petition herein filed, to wit:

"Your petitioner shows that, the said manager was appointed as the representative of the partnership in accordance with the plain terms and meaning of the said article 14. * * * That he remained under that impression until January 16, 1920, when the said Dillard informed petitioner that he had been employed by the said Caliste A. Duplantis, administrator, as personal representative of the heirs of the late H. Clay Duplantis; that he had been required by the said Caliste A. Duplantis to sign a written agreement of employment by which he was to take orders from the said administrator or the heirs of Duplantis, and that he was subject to discharge by them; * * * that he cannot consent to any such interpretation of article 14; * * * that the intent of article 14 * * * is that the manager, once selected * * * and approved, * * * then takes the place * * * lately held by the said H. C. Duplantis, and with him your petitioner is to continue the partnership until the end of the term."

In the meanwhile it appears that Caliste A. Duplantis, administrator and representative, etc., claiming an equal voice with Barrow in the management of the partnership business, has been acting as bookkeeper and paymaster of the concern, and has drawn his checks in

those capacities for such partnership purposes as met with his approval, against the funds of Barrow & Duplantis, deposited in the Bank of Houma, and that the checks have been duly paid.

In August of this year Dillard, having started some of the hands upon certain ditching by way of preparing the land for the proper putting down of seed cane, called for by article 13, and of getting the plantation into the good condition required by article 17 of the contract, he was notified by Duplantis to discontinue that work, and that, should he fail to do so, the names of the hands so employed would be stricken from the pay roll, and no wages would be paid to them; and thereupon, on August 27, Barrow obtained a writ of injunction, from the clerk of the district court, in the absence of the judge from the parish, prohibiting Duplantis from so interfering with Dillard; from drawing against the funds of the partnership, and prohibiting the bank from paying his checks; the allegations of the petition being that he has no such authority, under the contract of partnership; that Dillard, as manager, insists that the ditching is necessary to the welfare of the plantation; that the action complained of is arbitrary, illegal, injurious to petitioner, individually and as a member of the firm of Barrow & Duplantis, and to the great detriment and injury of the plantation affairs.

On September 1 following, Duplantis ruled Barrow to show cause why the injunction so issued should not be dissolved, on the grounds that—

"(1) As appears, on the face of the papers, the said injunction improvidently issued, and without sufficient cause.

"(2) The affidavit is insufficient and fatally defective, in that it is not positive, clear, and unconditional, as the law requires to authorize the issuance of the writ of injunction."

And on September 20, the rule was made absolute and the injunction dissolved; the reasons assigned by the respondent judge for that ruling being, in part, as follows, to wit:

"The injunction is based upon the false theory that the heirs and legal representatives of the deceased partner have no voice in the management of the partnership affairs; that the manager, Josh Dillard, appointed by the heirs of the deceased partner, with the consent of the plaintiff, to take the place of the deceased partner as manager, in accordance with article 14 of the articles of copartnership of Barrow & Duplantis, is now, for all practical purposes, the partner of said Barrow, and that together they can control the affairs of said partnership, without consulting the heirs and legal representative of the deceased partner, and free from any interference whatever on his part with the management and control of said partnership.

"This position is not sustainable under the articles of copartnership, or under the law, or under any principle of equity known to the court. On the contrary, I take it, the heir and legal representative of the deceased partner has an equal right with the said plaintiff to a voice in the control and management of the said partnership affairs, and, having this right, it cannot be denied him or suppressed by a resort to the equitable writ of injunction on the grounds alleged.

"Assuming, therefore, that the heirs and legal representative of the deceased partner had an equal right and authority with the plaintiff in the management of the partnership affairs, then he had the right to inquire into the necessity for certain ditching on the plantation, during the month of August, 1920, which plaintiff claims was an unauthorized interference on his part (which interference is the principal ground relied on for the issuance of the injunction herein) and, if the said heir and legal representative found, in his opinion, that such ditching was unnecessary and an unlawful expenditure of the funds of the partnership, then he had the legal right, and it was his duty, to object to it.

"It must be borne in mind that the plantation on which the ditching was being done does not belong to the partnership of Barrow & Duplantis, but is the separate property of Robert Barrow, who leased it to said partnership. It must also be borne in mind that the said partnership, as well as the lease of the plantation, expires at the end of the present year, 1920. Therefore it may be that the alleged ditching on said plantation, during the month of Au-

gust, 1920, was for the exclusive benefit of the owner of the plantation, Robert R. Barrow, and could not possibly inure to the benefit of the partnership; and, under such circumstances, it is clear that the manager, Mr. Dillard, would have no right to use the funds of the partnership for such purposes, and the legal heir and representative of the deceased partner would, undoubtedly, have the right to object to it, even though his authority in the management of the partnership was not coequal with that of the plaintiff and surviving partner. That the ditching done, or to be done, on the said plantation was for the exclusive benefit of the owner of the plantation, Mr. Barrow, and not for the benefit of the partnership, is supported by plaintiff's own allegations," etc. (quoting certain allegations of the petition which have been quoted, supra). "The foregoing are the only allegations of the petition for injunction which refer to the ditching, and there is nothing in them to show that the ditching was necessary or advantageous to the partnership of Barrow & Duplantis, but, on the contrary, I think they show that it was being done for the benefit of the plantation of which the plaintiff, Robert R. Barrow, is the sole owner. The plantation work for the present year is practically completed, the crop is about to be harvested, and whatever ditching is done now on the plantation can hardly be said to be for the benefit of the partnership, which, as already stated, will expire by limitation at the end of the present year. Under the circumstances, Caliste A. Duplantis, the heir and legal representative of the deceased partner, was justified, I think, in protesting against the ditching being paid out of the partnership funds, and in threatening to strike it from the pay roll, if the manager, Mr. Dillard, insisted on having the ditching done."

Respondent further concludes that Caliste Duplantis has an equal right, with relator, to draw the funds of the partnership from the bank.

"Moreover [the opinion proceeds] the said Caliste A. Duplantis, who is also the bookkeeper for the partnership, has been, for some time, drawing, either individually or as administrator, * * * against those funds, for partnership purposes, and, as there appears to have been no objection to it, until the filing of the petition for injunction herein, the presumption is that they were so drawn with the consent, either express or implied, of said plaintiff. Besides this, there is no allegation that said Duplantis has drawn any of the funds for his own benefit, or, is dissipating them; and, in the absence of any such allegation, it must be assumed that he has drawn, and will continue to draw, them solely and exclusively for partnership purposes."

Relator having then applied for a suspensive appeal from the judgment so rendered, the appeal was denied on the ground, as stated by respondent, that the reasons assigned for the issuance of the injunction were insufficient, "as will more fully appear by the written opinion handed down on September 20, 1920, which is hereto annexed and made part hereof"; that the acts complained of can be compensated in money, and, as there is no allegation to the contrary in the petition for injunction, no suspensive appeal lies from the order of dissolution; that to grant the appeal would have the practical effect of deciding, in limine, the principal question involved in this controversy; that is, the interpretation of the articles of copartnership, "which can only be decided after trial upon the merits."

And then followed the petition of relator to this court, which we are now to consider, for prohibition and mandamus.

In that petition relator reiterates the allegations of his petition for the injunction, to the effect that the manager, selected and approved as provided by article 14 of the contract, was to be in control of the partnership affairs, and was to see that they were conducted in accordance with the contract; that any interference with his management was a violation of the contract; that, to allow the administrator of the deceased partner, in whose appointment relator had no voice, and who is a plantation storekeeper, with little knowledge of plantation affairs, to control the manager, is to nullify a sacramental provision of the contract, by reason of which alone relator consented to its continuance after the death of his late partner; that the requirements of articles 13 and 17 of said contract are partnership obligations which the

manager is charged to see fulfilled; yet, because said seed cane cannot be properly put down except in well-ditched land, and he accordingly ditched the land for that purpose, his judgment is challenged, his authority denied, and the disorganization of his whole plantation force is endangered by Duplantis' threatened nonpayment of his pay roll; that, as contended for by petitioner and held by the manager, the ditching is necessary to properly put down seed cane for the next year's crop, an actual contractual obligation of article 13 of the contract, as well as of article 17, requiring the plantation to be kept and returned in good condition; and that he has no other remedy against irreparable injury except that which he here seeks,

The objections urged to the granting of the relief prayed for by relator are: (1) That the judgment dissolving the injunction is interlocutory; that no appeal lies from a judgment of that character save where its execution will cause irreparable injury to the party seeking such appeal; and that no such case is here presented, "as shown by respondents' reasons for judgment in dissolving the injunction * * * here specifically referred to and made part of this answer and return"; that he also makes part of his return his reasons for refusing to grant the appeal and the brief herein filed by his counsel; and he further alleges:

"That he has not rendered a final judgment in the case, nor on any issue therein, pertaining to the merits, but has strictly confined himself to deciding the sole issue presented by the motion on rule (for) the dissolution of the injunction for having been improvidently issued and without sufficient cause. The decree itself shows on its face that this was all that was decided by respondent. The reasons given for judgment form no part of the judgment, and cannot be taken into consideration in determining the question of the applicability of the judgment."

### Opinion.

[1] We concur in the view expressed by respondent, that the ditching, which is one of the subjects of this controversy, is not intended for the benefit of the partnership of Barrow & Duplantis, the lessee of the plantation, but is solely and exclusively for the benefit of Barrow, the owner and lessor. Inasmuch, however, as the articles 13 and 17 were incorporated in the contract of partnership and lease for the sole and exclusive benefit of the owner and lessor, the fact that the enforcement of their requirements will not inure to the benefit of the lessee, or of the heirs of the late partner of the owner and lessor, furnishes no basis for the attempt, by these heirs, to obstruct such enforcement. The right to use the plantation which the partnership acquired under the contract in question terminates with the harvesting and removal of the crops of this year, and, save for the obligations imposed by that contract, it is a matter of no concern to the partnership whether it leaves the plantation in good or bad condition, or with or without seed cane for the planting of the next year's crop. But these are matters of vital interest to the owner of the plantation, and the obligations which the contract imposes upon the partnership and upon the late partner and his representatives for the protection of that interest are quite as enforceable as any other obligations, whether in favor of the partnership or of the late copartner or his heirs, that the contract expresses.

Considering the requirements that "there shall be left on the * * * plantation, *properly put down,* sufficient seed cane to plant 300 acres, and that the plantation shall be kept in good order and condition and repair, and is to be turned over to said Barrow, at the expiration of the partnership, in like good condition," it is clear that the obligation imposed upon the partnership to "properly put down" the cane is as important and as imperative as the obligation to leave the cane on the plantation; and it is equally clear that the putting down of cane, intended to serve as

seed for next year's crop, is not a matter that can be postponed to await the decision, on appeal to this court, of a case which has not yet been tried in the district court, and may not reach this court, if at all, until the time for the planting of next year's crop shall have come and gone. The undisputed allegations of the petition herein filed are that the petitioner, and the manager, selected by the respondent heirs and approved by petitioner, agreeably to the provision of article 14 of the contract, consider that the ditching of the land is necessary for the proper putting down of the cane. We do not find that Caliste Duplantis, for himself and as the representative of his coheirs, thinks differently, but we gather from the opinion of the judge a quo that Duplantis objects to the ditching, and refuses to pay the hands engaged in that work, on the ground that it will inure to the benefit of Barrow, as owner and lessor, and not to the benefit of the partnership, as lessee, of the plantation. The petition for injunction alleged that the interference of Duplantis was unauthorized, arbitrary, and illegal, injurious to the plaintiff, individually and as a member of the partnership, and to the great detriment and injury of the plantation affairs.

The only grounds alleged in the motion to dissolve were that—

"As appears on the face of the papers, the said injunction improvidently issued, and without sufficient cause," and that "the affidavit is insufficient and fatally defective, in that it is not positive, clear, and unconditional, as the law requires, to authorize the issuance of the writ of injunction."

In the opinion of the trial judge, upon which his judgment sustaining the motion was based, we find no mention ·of the affidavit, nor is it referred to in the brief of the counsel. As to the sufficiency of the allegations, the law declares that—

"Injunction, or prohibition, is a mandate obtained from a court, by a plaintiff, prohibiting one from doing an act *which he contends* may be injurious to him or impair a right *which he claims."* C. P. art. 296.

And after specifying particular cases in which the writ may issue it further declares that—

"Besides the cases above mentioned, courts of justice may grant injunctions in all other cases when it is necessary to preserve the property in dispute during the pendency of the action, and to prevent one of the parties, during the continuance of the suit, from dilapidating the same, *or from doing some other act injurious to the other party."* (Italics by the writer.) C. P. art. 303.

For the purposes of the rule to dissolve, the allegations of fact are to be taken as true. Jenkins v. Felton, 9 Rob. 200; Union Sawmill Co. v. Lake Lumber Co., 117 La. 932, 42 South. 429. In the case first above cited it is said by the court:

"But a motion to dissolve an injunction on the face of the papers is not without its danger. It is in the nature of a demurrer, and admits all the facts alleged to be true, however improbable they may appear." 9 Rob. 202.

In the instant case, we find no improbability in the allegations that the ditching of the land is a necessary preliminary to the proper putting down of the cane, and that its prevention will operate to the injury of plaintiff in injunction.

As his reasons for denying the appeal, the respondent judge again states that, in his opinion, the facts alleged are insufficient to justify the issuance of the injunction, and, further, that the injury to occur from the acts sought to be prevented, which injury relator alleges will be irreparable, can be compensated in money; and that, to grant the appeal will be to reinstate the injunction, and in effect to decide the principal question involved in the controversy, to wit, that of the proper interpretation of the articles of copartnership, "which can only be decided after trial on the merits."

We take it that the question to which he

thus refers is that of the status and authority of the manager, selected and approved as provided by article 14 of the contract, concerning which question our learned brother has expressed the views upon which he has based his judgment dissolving the injunction, but with respect to which, deeming such expression unnecessary at this time, we propose merely to reserve the rights of the parties for consideration when the case comes up on its merits, in the event of such happening. For the purposes of the immediate question now before us, i. e., whether relator is entitled to a suspensive appeal from the judgment dissolving his injunction, it appears to us immaterial whether any manager had been provided for to take the place of H. Clay Duplantis, or had been selected and approved by those who have succeeded him, and that the case may be dealt with as though he were alive, or as though, being dead, he were here represented by Caliste Duplantis, as his administrator and sole heir. In either case, it appears from the face of the papers that the firm of which Barrow was a member, being the lessee of his plantation, which it was cultivating, assumed the obligation, as part of the consideration moving to the lessor, for the use of the plantation, to leave thereon, at the expiration of its lease, certain seed cane, "properly put down"; that the purpose in requiring the cane to be properly put down is to save it for seed; that it is a necessary preliminary to its proper putting down, that the land whereon it is to be put should be well ditched; that the acts of which relator complains and against which the injunction is issued are violative of that obligation, and, unless prohibited, will prevent its discharge, within the time and under the conditions contemplated by the contract.

[2] In denial of the right of appeal which relator asserts it is said that the judgment in question is not a final, but is an interlocutory, judgment, from which a suspensive appeal will lie only in the event that its execution will cause irreparable injury. But inasmuch as time is of the essence of the contract here in question, in so far as the proper putting down and saving of the seed cane is concerned, as the judgment in question holds, in effect, that relator has no right, under the contract, to call upon the partnership to take the preliminary steps considered necessary to that end, and as these steps can never be taken after the crop now in the field reaches a condition when the cane can no longer be put down with the hope of saving it for seed, it is obvious that the judgment is, or will be, final in its operation, and will forever preclude relator from vindicating his right to exact the fulfillment of an obligation contracted by his deceased partner of so important a character that it cannot be supposed that without it he would have entered into the contract at all. It is true that there is a suit pending for the dissolution and settlement of the partnership, but that suit was brought long before the issue here presented was, or could have been, raised; and, as the sole purpose of this suit, which might very well have been docketed under a different number from that of the original proceeding, is to invoke a judgment upon the two particular questions which have been stated, we can discover no reason why such judgment, when rendered, should not be regarded as final, within the meaning of the Code of Practice, as it most assuredly will be in its operation, or why it should not furnish a basis for a plea of res judicata.

"Definitive or final judgments," says that Code, "are such as decide all points in controversy between the parties."

But it further says:

"Definitive judgments are such as have the force of res adjudicata." C. P. art. 539.

It has, however, been held by this court, in a case in which the distinction between

final and interlocutory judgments was exhaustively considered, that—

"There are many cases in which judgments may be rendered which are sufficiently final to authorize an appeal, although not final on all the matters in dispute. * * * It is not always necessary that the order itself should work an irreparable injury. It is sufficient if it be such as, by the final action of the court, would cause such injury [authority]. * * * An interlocutory judgment should not touch upon the merits of the cause; but the moment that it does it acquires a character of finality, which assimilates it to a final judgment and renders it appealable. * * * If an interlocutory order will finally affect the merits of the case, or deprive a party of any benefit which he may have at the final hearing, an appeal is allowable." Cary v. Richardson, 35 La. Ann. 506, 507.

In relator's suit to dissolve the partnership, the main cause of action relied on is the interpretation which the heirs of H. Clay Duplantis place upon article 14 of the contract, concerning which his petition in that suit alleges that—

"Petitioner * * * cannot consent to any such interpretation," etc.

In dissolving the injunction obtained by relator, our learned brother of the district court rests his judgment upon the sole ground that the interpretation thus objected to and put at issue is correct; and yet, in denying the appeal from that judgment, he says that, to grant the appeal would have the practical effect of deciding in limine the principal question now involved in this controversy; that is, the interpretation of the articles of copartnership between plaintiff and the late H. C. Duplantis, "which can only be decided after trial on the merits." He makes his reasons for the judgment dissolving the injunction part of his return, showing cause why the relief herein prayed for should not be granted, and yet in that same return he says:

"Further answering, respondent shows that he has not rendered final judgment in the case, nor on any issue therein pertaining to the merits, but confined himself strictly to deciding the sole issue presented by the motion * * * [for] the dissolution of the injunction for having been improvidently issued without sufficient cause. The decree itself shows on its face that it was all that was decided by respondent. The reasons given for judgment form no part of the judgment, and cannot be taken into consideration in determining the question of the appealability of said judgment."

Taking the allegations of the petition for injunction to be true, and considering, in connection therewith, as has the respondent judge, the contract of partnership and the petition for its dissolution, it appears, beyond all question, that the judgment dissolving the injunction obtained by relator will be absolutely final in its operation, that is to say, unless the obstruction, which it in effect maintains, to the proper putting down from the crop of 1920 of the seed cane required for the crop of 1921, is removed by an appeal suspending the operation of the judgment, the right, which the relator asserts to have the cane so put down, and thereby saved, can never hereafter be enforced. And upon the basis of that conclusion we further conclude that the damage which relator may sustain from a denial of the appeal, and the permitting of the judgment in question to become operative, may be irreparable, within any reasonable sense of that term.

"It is difficult," this court has said, "to lay down any precise rule as to what gives to an injury the quality of being irreparable; but the general principle is that an injury the damage from which is merely in the nature of pecuniary loss, and can be exactly and fully repaired by compensation in money, is a reparable injury for which a bond of sufficient amount and properly secured may afford all [an] adequate indemnity." Puckette v. Hicks, 39 La. Ann. 902, 2 South. 801 (4 Am. St. Rep. 242).

In this case it is impossible to determine the extent of the loss that may result should Myrtle Grove plantation be left, at the end of the current year, without seed cane for the crop of next year, but it may be assumed

that it would be very serious, and all the more so if the sugarhouse and refinery should be kept idle, even for part of the season, on that account; nor are we able to determine what loss relator may sustain should the respondent Caliste Duplantis be allowed an absolutely free hand in drawing the funds of the partnership from the bank of Houma, though in so stating we have no intention of reflecting upon either the integrity or the intelligence of Mr. Duplantis. Beyond that, it will be observed that, within the meaning of the opinion above quoted a loss is reparable, because compensable in money, where "a bond of sufficient amount and properly secured" is given to cover it, but in this case there has been no bond given, save by the plaintiff in injunction, and (the relief herein prayed for being denied), should it turn out, after hearing the case on the merits, that the injunction was improvidently dissolved, he would be compelled to seek his compensation from persons who might not be able to respond, including the minor children of H. Clay Duplantis; and the courts would be called on to deal with the interesting question of the liability vel non of minors for losses incurred under contracts of partnership to which, without their knowledge or volition, they have become parties, by reason of the ante mortem stipulations to that effect of their parents. In Schwan v. Schwan, 52 La. Ann. 1193, 27 South. 678, upon the question whether an appeal will lie from a judgment dissolving a sequestration, on motion and without bond, this court said:

"Where, as in the instant case, the writ is dissolved on motion, and without bond, the weight of authority is decidedly in favor of the proposition that the injury may be irreparable, and that an appeal should be allowed." Citing Eltringham v. Clarke & Pingle, 49 La. Ann. 343, 21 South. 547; State v. Judge, 9 Mart. (O. S.) 301; Johnston v. Johnston, 13 La. Ann. 581; White & Trufant v. Cazenave, 14 La. Ann. 57; State ex rel. Street v. Judge, 35 La. Ann. 515; State ex rel. Roth v. Judge, 37 La. Ann. 846; Id., 38 La. Ann. 49; State ex rel. Gay v. Judge, 25 La. Ann. 299.

In White & Trufant v. Cazenave, 14 La. Ann. 57, it was held (quoting from syllabus):

"Article 566 of the Code of Practice allows an appeal in all cases where an interlocutory order may work an irreparable injury.
"Held, that an order which necessarily compels a party, in order to protect his rights, to institute another suit for the same cause of action, is one from which an appeal will lie under this article of the Code of Practice."

For the reason thus assigned, it is ordered that a writ of mandamus issue as herein prayed for, directing the respondent judge to grant to relator a suspensive appeal from his judgment dissolving the injunction sued out by relator on August 27, 1920, upon a bond for costs. It is further ordered that the rights of the litigants with respect to the interpretation of article 14 of the contract of partnership and lease here called in question, and to the status and authority of the manager selected by the respondent, administrator, heir, and representative and approved by relator, be fully reserved for consideration on the merits of the case. It is further ordered that said administrator, heir, and representative, herein made respondent, pay the costs of this proceeding.